SOMERSET RAILWAY, In Equity,

*vs.*

LEWIS PIERCE, and others, Trustees and others.

Cumberland.    Opinion April 4, 1904.

*Trusts,* expense of adversary proceedings not allowed.    *Equity.*

It is a general equitable principle that when one of several parties, having a common interest in a trust fund, at his own expense takes proper proceedings for the protection and preservation of the fund, he is entitled to reimbursement out of the trust fund itself, or by contribution from those who accept the benefit of his efforts.

The trust fund should bear the expense of its administration, but it is chargeable only with those expenses which are incurred for the benefit of all the cestuis que trustent.

When one brings adversary proceedings to take the possession of trust property from those entitled to it, in order that he may distribute it to those who claim adversely, and fails in his purpose, he is not entitled to reimbursement of his expenses out of the trust fund, or contribution from those whose property he sought to misappropriate.

See *Somerset Railway* v. *Pierce,* 88 Maine, 86; *Pierce* v. *Ayer,* 88 Maine, 100; *Pierce* v. *Somerset Railway,* 171 U. S. 641; *Pierce* v. *Ayer,* 171 U. S. 650.

On report.    Motion in equity.    Denied.

The case is stated in the opinion.

*D. D. Stewart,* for trustee.

*W. T. Haines and J. H. & J. H. Drummond, Jr.* for Railway.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

POWERS, J.    This case is reported to the law court upon a motion, filed in the name of the trustees, for the appointment of a master to determine and report what sums are due them for services and disbursements in the several suits in which they have been parties as trustees since October, 1902.

July 1, 1871, the Somerset Railroad Company made a mortgage of its franchise and railroad property to trustees to secure the payment of certain bonds. The conditions of the mortgage having been broken, the mortgage bondholders in 1883 organized a new corporation, under the statute, by the name of the Somerset Railway. That corporation, in accordance with the statute, took possession of all the mortgaged property on Sept. 1, 1883, and has ever since retained possession and operated the road. On July 8, 1884, it purchased the equity of redemption from the mortgage, from which sale no redemption has been had. The suits referred to in the motion were first, two writs of entry, brought by the trustees under the mortgage against the servants and officers of the Somerset Railway, to recover possession of all the property embraced in the mortgage; *Pierce* v. *Ayer*, 88 Maine, 100; second, the present suit in equity brought by the Somerset Railway to have the prosecution of the writs of entry enjoined, its title to the mortgaged property declared valid, and the trustees ordered to release and convey to the new corporation all the title they held as trustees under said mortgage, *Somerset Railway* v. *Pierce*, 88 Maine, 86; third, writs of error in the same cases to the U. S. Supreme Court. *Pierce* v. *Somerset Railway*, 171 U. S. 641; *Pierce* v. *Ayer*, 171 U. S. 650.

In all these cases the trustees were unsuccessful. The expenses referred to in the motion are the taxable costs recovered or decreed against the trustees in these suits because they were unsuccessful, the taxable costs which they would have recovered or which might have been decreed them if they had been successful, and the services and disbursements of the counsel in the defense of the present suit and the prosecution of the other suits.

An examination of the evidence shows that the trustees have never paid or agreed to pay a dollar of the items claimed, and that the services were not rendered or the disbursements made under such circumstances that any promise on their part to pay for the same can be implied. On the contrary it sufficiently appears from the evidence that a minority of the bondholders, who had declined to exchange their bonds for the stock in the new corporation, commenced and prosecuted the writs of entry and defended this bill in equity in the

name of the trustees but for their own benefit. The trustees only authorized such use of their names upon an agreement to save them harmless from all cost and expense. In accordance with that agreement a bond dated June 12, 1893, was executed and delivered by certain of the minority bondholders to the trustees to indemnify them against all costs and expenses in the writs of entry and this equity suit. The counsel for whose services an allowance is now sought were employed and acted for the minority bondholders throughout the course of this entire litigation. The trustees have been fully paid and given receipts for all their personal services and disbursements. Strictly speaking, therefore, there remain unpaid no services and disbursements on the part of the trustees within the language of the motion filed, and none for which they are in any way liable.

It is claimed, however, that in equity the trust fund is properly chargeable with the payment of the expenses incurred by the minority bondholders in these suits. It is a general equitable principle that where one of several parties, having a common interest in a trust fund, at his own expense takes proper proceedings for the protection and preservation of the fund, he is entitled to reimbursement out of the trust fund itself, or by contribution from those who accept the benefit of his efforts. *Trustees of the Internal Improvement Fund* v. *Greenough*, 105 U. S. 527. The trust fund should bear the expense of its administration. Such proceedings by whomsoever taken are for the benefit of all, to rescue the trust estate from destruction and restore it to the purposes of the trust.

The expenses for which reimbursement is sought here do not fall within this class. The history of this litigation shows that it was an effort on the part of the minority bondholders to wrest the trust estate from the possession of the new corporation to which it belonged, and which was holding and using it for the benefit of all who were interested in it. The object, if successful, was to apply the trust estate to the payment of the bonds held by the minority to the exclusion of the majority who had exchanged their bonds for the stock of the new corporation. It is not the fact that this litigation was unsuccessful,—not its result so much as its purpose,—which stamps the present claim as inequitable, and places it without the pale of those

which equity allows as a charge upon the trust estate. The bondholders were divided into two hostile camps. In such cases the defeated party must bear the expense which it has incurred in its own interest alone. The trust estate is chargeable only with that which is incurred in the interest of all the cestuis que trustent. This principle is well stated by Mr. Justice Woods in *Hobbs* v. *McLean,* 117 U. S. 567. "Where one brings adversary proceedings to take the possession of trust property from those entitled to it, in order that he may distribute it to those who claim adversely, and fails in his purpose, it has never been held, in any case brought to our notice, that such person had any right to demand reimbursement of his expenses out of the trust fund, or contribution from those whose property he sought to misappropriate."

*Motion denied with costs against trustees.*