[L. A. No. 6929. In Bank.—March 29, 1922.]

In the Matter of the Estate of EUGENIE A. DUFFILL, Deceased. HARRY DUFFILL, Appellant, v. LOS ANGELES TRUST & SAVINGS BANK et al., Respondents.

[1] ESTATES OF DECEASED PERSONS — TRUSTS — COMPENSATION OF TRUSTEE.—A decree settling a current account of a testamentary trustee and allowing and approving a schedule attached to the account in which the value of certain stock belonging to the estate is shown to be more than it was in fact, during the period covered by the account, while increasing the *corpus* of the trust estate, does not injure or prejudice anyone interested in the estate so far as fixing the fees of the trustee is concerned, where the allowance to the trustee is based upon a percentage of the gross income and not upon the *corpus* of the property.

[2] ID.—FIXING COMPENSATION — DISCRETION. — Under the codes the fixing of the compensation of testamentary trustees is left to the judicial discretion of the court, to be exercised, not arbitrarily, but always with due and proper consideration of the nature and extent of the services actually rendered.

[3] ID. — SERVICES CONSIDERED. — Services of a testamentary trustee fairly include not only what might be termed physical services, such as collecting and distributing the income, care of the property, making investments, and the like, but in addition the responsibilities arising from and ever attending the faithful and profitable administration of the trust.

[4] ID.—VALUE OF SERVICES.—The value of the services of a testamentary trustee should not be determined by comparing them with those of an executor or an administrator, as such a trustee is subject to greater responsibilities than a personal representative of a deceased person of an estate of equal size.

[5] ID.—DEFENSE OF TRUST—ATTORNEYS' FEES.—Where a testamentary trustee entered into an agreement with its attorneys that their fees should be wholly contingent on the preservation of the trust, and that it would be necessary for the court to fix and allow such fees as would be reasonable under all the circumstances, and that any fee paid to them should be approved by the court, the agreement did not provide for a contingent fee as commonly understood.

[6] ID.—EVIDENCE—EXPERT TESTIMONY.—Testimony of attorneys as to the proper amount to be allowed attorneys for a testamentary trustee is not binding upon the court, which has the unquestioned power to fix the amount independent of expert testimony.

[7] ID.—ATTORNEYS' FEES—AMOUNT.—It is held in this case that the fees allowed the attorneys for the testamentary trustee, in view of all the circumstances of the litigation, in connection with which they were allowed, its importance, the amount involved, and the extent and character of the services, were not excessive.

[8] ID.—DEFENSE OF TRUST—DUTY OF TRUSTEE—COMPENSATION OF ATTORNEYS.—Where one of the beneficiaries under a testamentary trust assailed the validity of the entire trust, it was the duty of the trustee to defend the trust, and where it succeeded in preserving the general scheme of the trust, its attorneys should be compensated for the entire services, and the amount should not

---

2. Compensation of trustees, note, 17 **Am. Dec.** 266.

6. Admissibility and necessity of expert evidence on question of value of attorney's services, notes, 20 **Ann. Cas.** 53; **Ann. Cas.** 1914D, 369.

Conclusiveness of the testimony of experts as to the value of professional services, notes, 42 **L. R. A.** 753; 45 **L. R. A. (N. S.)** 181.

be apportioned among the beneficiaries according as the service helped or injured the different ones.

[9] ID.—EXPENSES OF TRUST—SOURCE OF PAYMENT.—While, under ordinary conditions, the customary expenses incurred in the administration of a trust are payable from the income, extraordinary and unusual expenses are payable from the *corpus* of the trust.

[10] ID. — COMPENSATION OF PERSONAL ATTORNEY. — The contention that the interest of a beneficiary under a testamentary trust in the *corpus* of the trust property should contribute no part of the fee of the attorneys for the trustee, because the beneficiary was obliged to compensate his personal counsel who represented him in his effort to secure the complete annulment of the trust, cannot be maintained.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher and Hunsaker, Britt & Cosgrove for Appellant.

Kemp, Mitchell & Silberberg and Alex W. Davis for Respondents.

SHURTLEFF, J.—Eugenie A. Duffill, a resident of the county of Los Angeles, this state, died on January 7, 1916, leaving a last will and testament which was duly admitted to probate by an order of the superior court of said county. By the terms of this will the testatrix, after making a number of specific bequests, bequeathed and devised the residue and remainder of her estate, real and personal, to the Los Angeles Trust and Savings Bank, one of the respondents, in trust for certain enumerated purposes. Those material to this inquiry were: To invest and reinvest said property in productive and income-bearing property and to apply and distribute the income and principal as follows: Pay to Albert Duffill, a minor, a grandson of testatrix, and son of Harry Duffill, a son of testatrix, the sum of $3,000 per annum, to be paid until he reaches the age of twenty-one years; to the said Harry Duffill the sum of $4,000 per annum, to be paid until Albert attains the age of twenty-one years, or, in the event of Albert's death before reaching that age, until the date Albert would have

been twenty-one had he lived, each of said payments to be made in the amounts and in the manner directed in the will. It was further provided that in the event Harry Duffill should marry one Mrs. Alice McNamara, then and in that event said trustee shall pay to him thereafter "only the sum of two thousand dollars per year instead of four thousand dollars per year." The testament also directed that when Albert attains the age of twenty-one years the trustee shall "segregate said trust fund, and *any accumulations thereof,* into two equal parts, and transfer and convey one of said parts to my son, Harry Duffill, provided, however, that in the event my said son, Harry Duffill, shall have married Mrs. Alice McNamara prior to the date when said Albert Duffill shall have attained the age of twenty-one years, then and in that event the said trustee shall at said time distribute to my son, Harry Duffill, one-half of the balance of the estate in the hands of said trustee after withdrawing therefrom all of the stock of the Grasselli Chemical Company" (Italics ours). Parenthetically, it should be said that the will provided that the last-mentioned stock, which constituted a large part of the estate and the value of which, as will presently appear, is involved in this appeal, *should not be sold by the trustee.* The will, after making provision for the distribution by the trustee to Albert, upon attaining the age of twenty-one years, of his share, provided that in the event of the death of Harry "prior to the distribution to him of his portion of the trust estate," distributable to him in accordance with the terms of the will and which terms were part of the trust created thereby, the trustee "shall distribute all of said trust fund" to Albert "in the same manner, and upon the same trusts as are provided for the portion of said trust fund" directly distributable to him (Albert) under the trust. In the event of the death of Albert while there remains undistributed to him any portion of the trust fund, distributable to him under the terms of the trust, the trustee forthwith shall distribute to Martha Duffill (wife of Harry and mother of Albert) "one-fourth of the entire trust estate and accumulations then in the hands" of the trustee, and the remaining three-fourths shall be distributed to Harry, "said distribution to be made at the same time that . . . Albert Duffill would have reached the age of twenty-one years

had he lived." In the event of the death of both Harry and Albert "while any portion of said trust estate remains in the hands of the trustee and undistributed," upon the death of the last survivor of them the trustee shall forthwith distribute the entire trust fund undistributed at that time as follows: An undivided one-fourth thereof to Martha Duffill; an undivided one-fourth thereof to Mrs. Ida Ireland, and the remainder thereof, share and share alike, to the children of Mrs. Daniel Bailey living at the time of the death of the last survivor of Harry and Albert. The will nominated the said Los Angeles Trust & Savings Bank the executor thereof, and requested that while acting in the capacity of either trustee or executor, it "retain as its attorney John M. Kemp." The order admitting the will to probate included the appointment of said Los Angeles Trust & Savings Bank as executor, and as such executor it administered the estate of said Eugenie A. Duffill, deceased. Ultimately a petition for the distribution of the estate was filed by the executor, which, although not incorporated in the record, unquestionably asked for distribution in accordance with said terms of the will. The appellant, Harry Duffill, upon the hearing of said petition, presented a number of objections to distribution in conformity with the will, which, with one exception, were based upon the contention that the testamentary provisions objected to were illegal and void. The portions assailed were, briefly, the following: (1) The provision for the accumulation of the income to be paid adult persons; (2) the part of the will reducing Harry's annuity of $4,000 and the one-half of the trust fund which he would otherwise receive, should he marry Mrs. Alice McNamara. Harry further claimed that the destruction of these enumerated features of the will, by reason of their illegality, involved a disposition of the estate of the decedent contrary to her will, so that her intent failed, the result of which was to invalidate the trust in its entirety. He made the further contention that certain large stock dividends declared and paid during administration by the Grasselli Chemical Company, constituted income. All of the foregoing claims of Harry Duffill were resisted by the Los Angeles Trust & Savings Bank as executor, as trustee named in the will, as guardian for Albert, of whom it was apparently the legally appointed guardian, and Martha Duffill,

all of whom were represented by the same firm of attorneys. The superior court sustained all of said contentions upon the part of Harry, except the one that the entire trust was invalidated. A decree of final distribution was entered accordingly, which was on appeal affirmed by this court (*Estate of Duffill*, 180 Cal. 748 [183 Pac. 337]).

The particulars of the appeals, two having been prosecuted, will be discussed in the course of this opinion.

The decree of distribution, which became final August 31, 1919, distributed certain property to the respondent Los Angeles Trust & Savings Bank in trust, the possession of which it as executor, pursuant to the terms of said decree, transferred to itself as trustee on September 8, 1919.

On February 20, 1920, said Los Angeles Trust & Savings Bank, as such trustee, filed its "first account current and report showing the administration of the trust estate," including, among other things, receipts and disbursements "since the 8th day of September, 1919 [the date of the transfer of the trust property to it], to the 22nd day of January, 1920." It was alleged in said report, which was in the nature of and is frequently herein called a "petition," that during the administration of the estate of Eugenie A. Duffill, deceased, and after the filing of the petition for final distribution therein, Harry Duffill filed objections, and to which we have just referred, to the distribution prayed for, and sought to have the entire trust, as provided in the will of deceased, declared invalid, and the whole of her estate immediately distributed to him, which necessitated the employment by the trustee of attorneys to defend the will and trust by it created, and that it employed the firm of Kemp, Mitchell & Silberberg to render that service. It was further alleged that had all the objections of Harry been sustained, the trust would have been rendered invalid and there would have been no property in the hands of the trustee to pay said attorneys, since all of the property of the deceased would, pursuant to the laws of succession, have been distributed directly to Harry, her only child and sole heir, and Albert would have received nothing "under said will, either presently or in the future." The report also averred that the petitioner (Los Angeles Trust & Savings Bank) made an agreement with the said attorneys (Kemp, Mitchell & Silberberg) whereby it was agreed "that in case

said Harry Duffill succeeded in declaring the said trust invalid, that the said attorneys should receive nothing for their compensation, and that their fees should be wholly contingent upon the successful termination of the said litigation, . . . that if said attorneys were successful in sustaining the said will and the trust provisions thereof, that it would be necessary that the court should allow such fees as would be reasonable under all of the circumstances and that any fee paid to them should be approved by this court'' (superior court of the county of Los Angeles). The report further alleged the filing by Harry of said objections to the distribution of the estate of deceased as prayed, the various hearings and arguments in the matter; the filing of voluminous briefs; the rendering of an opinion by the trial court sustaining the trust and ordering a decree in accordance with such opinion; the reopening and reargument of the matter; the preparation of additional briefs resulting in the court again upholding the trust, and a decree to that effect filed and signed on July 17, 1918; that Harry appealed to this court from said decree of final distribution; the argument in such appeal; the preparation and filing of briefs, and the preparation of an answer to Harry Duffill's petition for rehearing after the affirmance of said decree by this court, and the denial of such petition. It also alleged that the litigation which ensued by reason of Harry's said objections ''covered a period of nearly three years''; that the value of the trust estate was approximately $1,000,000, and that the gross income from the estate since the death of said Eugenie A. Duffill, which, as has been said, occurred January 7, 1916, had (on February 20, 1920) amounted to about $400,000; that there are two principal beneficiaries of the said trust estate (assuming that the minor Albert Duffill lives to the age of twenty-one years), and that when the said Albert Duffill shall attain the age of twenty-one years, the *corpus* of the said estate, according to the terms of said decree, will be divided equally between said minor and the said Harry Duffill, and that it is just and proper that the entire fee for sustaining the said trust and will should be paid from the *corpus* of the said trust estate. It was shown by the report and account that the accumulations for the benefit of Albert amounted to $195,083.80. The prayer asked that the account be settled and allowed; for reasonable compensation to the

attorneys for the trustee for their services in connection with
"litigation involving the validity of the will of the deceased
and of the said trust"; that a reasonable sum be allowed
the trustee as compensation to the date of filing the account
and report (February 20, 1920), which shall also include a
reasonable amount to be allowed the attorneys for the trus-
tees "for the preparation and filing of this account and for
legal services in the administration of the said trust to
this date" (February 17, 1920). To this account and report
the appellant Harry Duffill filed a number of objections, but
those material to this inquiry were (1) that the valuation
of $190 per share of the Grasselli Chemical Company was
too large, and that its true value was $170 per share and no
more; (2) to the allowance out of the trust estate of a fee
(by Harry called a "contingent fee") to the trustee for its
attorneys. It should be noted that Harry did not object,
and never has objected, and does not now object, to the
allowance of reasonable compensation to the attorneys for
petitioner, or of a "reasonable sum . . . as compensation"
to the Los Angeles Trust & Savings Bank as trustee. Harry
does, however, as will subsequently be developed, contend
that the respective sums allowed in response to the applica-
tion were not reasonable.

Upon the hearing, the account, with certain corrections
with which we are not concerned, was allowed and approved.

The court in the main found that the allegations of the re-
port were true, that on September 8, 1919, the date upon
which it was delivered to the Los Angeles Trust & Savings
Bank as trustee, and up to and including January 22, 1920,
the date to which the account is brought, the value of com-
mon stock of the Grasselli Chemical Company was $170 per
share, and not $190 per share as shown in the account and
report, "but that said stock is carried at $190.00 per share
as a matter of bookkeeping for the reason that the final de-
cree of distribution in the above named estate (Eugenie
A. Duffill, deceased) fixed a value on said stock of
$190.00/100 per share," which valuation was allowed and
approved by the decree.

The court further found that, had the objections of Harry
Duffill to distribution of his mother's estate been entirely
sustained, the result would have been to extinguish the trust
and that there would have been no property in the hands of

the trustee from which to pay attorney fees; the employment by the trustee of the firm of Kemp, Mitchell & Silberberg as its attorneys and the agreement between said attorneys and the trustee to the effect that their fees should be wholly contingent upon the preservation of the trust, and that, in the event "the trust should be sustained, it would be necessary that the court should fix and allow such fees as would be reasonable under all of the circumstances, and that any fee paid to them [attorneys] should be approved by the court"; that various hearings were had of said objections of Harry to the decree of distribution.

The court further found "that the said Los Angeles Trust & Savings Bank, as trustee, the said Albert Duffill by his guardian Los Angeles Trust & Savings Bank, and Martha Duffill, as beneficiaries under said trust, defended the validity of the said trust. That Kemp, Mitchell & Silberberg represented said Los Angeles Trust & Savings Bank as trustee, Martha Duffill and Albert Duffill by Los Angeles Trust & Savings Bank, his guardian"; that evidence was taken and the matter argued and briefed by the respective parties, and the court rendered its decree, and, as heretofore stated, distributed the estate accordingly, and adjudged that the said provision for accumulations, except the one for the benefit of Albert, and the condition in restraint of marriage, were, and each of them was, void, and that the trust declared in the will was otherwise lawful and enforceable. That Harry Duffill appealed from that portion of the decree adjudging the trust valid, and that "the Los Angeles Trust & Savings Bank as trustee and executor, Albert Duffill by his said guardian, and Martha Duffill appealed [to this court] from the whole of said decree. That briefs were prepared and filed and thereafter the decree was affirmed (180 Cal. 748 [183 Pac. 337]). That the estate was distributed in accordance with said decree, and that the Los Angeles Trust & Savings Bank, as trustee, received "as of September 8, 1919, properties of the value of $1,000,000." The court further found: "That Kemp, Mitchell & Silberberg rendered their services to said trustee pursuant to said contract and agreement. That said services were rendered in the defense of the validity and in protection of the trust itself and for the purpose of preserving and protecting the validity of the said *trust for the benefit of the beneficiaries*

*thereof and inured to the benefit of said entire trust.* That the reasonable value of said services of Kemp, Mitchell & Silberberg is the sum of $75,000, and the said sum is hereby allowed to said trustee for the said services of said attorneys. It is further ordered that the said sum of $75,000 be paid ratably out of the *corpus* of the said trust estate and from the fund accumulated for the benefit of Albert Duffill, a minor, as the same was distributed to and received by the said trustee from the said executor. That said trustee rendered further services in the handling of the said estate after the same was distributed to it, and there is hereby allowed to said trustees for said services the further sum of $3449.72 as compensation to said trustee for its services from September 8, 1919, up to and including the filing of this account." It is from parts of this decree that this appeal is taken. The particulars in which appellant seeks a reversal, each upon the ground of the insufficiency of the evidence to justify it, are the following: The fixing of the value of the capital stock of the Grasselli Chemical Company at $190 per share; the amount ($3,449.72) allowed the trustee as compensation for its services performed between September 9, 1919, and January 22, 1920, both inclusive, and the allowance to the trustee of $75,000 for the services of its attorneys.

[1] We cannot see in what respect the appellant is injured by that portion of the decree which allows and approves Schedule "B" attached to the account in which the value of the common stock of the Grasselli Chemical Company is shown to be $190 per share, in view of the fact that the decree declares that during the period covered by the account its value was in fact $170 per share. Such valuation was in accordance with the stipulation of the parties made at the hearing "that as of the date the decree became final . . . the actual value of the Grasselli Chemical Company stock was $170 per share," and it was also of that value at the time this account was filed. It was likewise stipulated that the stock was worth $170 a share as of the date January 22, 1920. The valuation of $190 was the one fixed in the decree of distribution of the estate of Eugenie A. Duffill, deceased. We think the language of the decree is the equivalent of a finding that the real value of the stock at the times indicated was $170 per share. The decree

188 Cal.—35

in terms declares that "said stock is carried at $190.00/100
per share as a matter of bookkeeping." While it must be
conceded that the $190 per share valuation increased the
volume of the *corpus* of the trust estate in the sum of about
$82,620, this was of no moment and in nowise injured or
prejudiced anyone interested in the estate so far as fixing
the fee of the trustee was concerned, since the allowance to
the trustee, as stated by appellant, "was 7½% of the *gross
income* shown by the [trustee's] account" (italics ours),
and not upon the value of the *corpus* of the trust estate.

[2] The next contention of the appellant is that the al-
lowance of $3,449.72 to the trustee for its services from
September 8, 1919, to January 22, 1920, both dates inclusive,
a period of four months and fourteen days, was excessive
and unreasonable. Our code directs that the trustee shall
be allowed "such compensation for services as the court may
adjudge to be just and reasonable" (Code Civ. Proc., sec.
1700), which in effect leaves the fixing of the amount thereof
to the judicial discretion of the court, to be exercised, not
arbitrarily, but always with due and proper consideration
of the nature and extent of the services actually rendered.
[3] These services fairly include not only what might be
termed physical services such as collecting and distributing
the income, care of the property, making investments, and
the like, but in addition the responsibilities arising from and
ever attending the faithful and profitable administration of
the trust. Doubtless the amount of compensation awarded
to the trustee in this instance was, in a measure, based
upon the testimony produced by respondent, the appellant
having offered none upon that issue, which in substance was
that the usual charge for services of trustees similar to those
involved here is seven and one-half per cent of the gross
income of the trust, and that an amount so ascertained is a
reasonable allowance to the trustee in this instance. The
trustee's trust officer, when testifying touching the com-
pensation to be awarded the trustee, said: "That [seven
and one-half per cent of the gross income] is the usual
charge made by trustees under such circumstances, and that
is a reasonable amount. In this instance, I do not recall
how much that would figure, but I think it will run $1,500
or $1,600." We think it entirely clear from the context
that the witness intended to and did adopt the percentage

mentioned as the controlling basis for his opinion, and that the figures given were errors attributable to a hasty computation. It appears that the estate in the hands of the trustee and respondent consisted of 4,131 shares of the capital stock (common) of the Grasselli Chemical Company, a beneficial interest in a trust with the Citizens Trust & Savings Bank of orange and walnut groves; rented property in the city of Los Angeles, and an undivided one-half interest in acreage in Los Angeles County; add to the value of these properties the income from the trust, and you have an estate approximating $1,000,000 in value, the care of which gave rise to corresponding responsibilities, properly to be taken into consideration by the court when determining the fee of the trustee.

[4] Appellant draws our attention to the fact that the sum allowed the respondent as compensation for its services is largely in excess of what its commissions would have been under our statute regulating the same had it received cash in an amount equal to said gross income in the capacity of an executor. But, in our opinion, the value of the services of the respondent, under the circumstances of this case, should not be determined by comparing them with those of an executor or administrator. A trustee of a trust, such as we are considering, is subject to greater responsibilities than a personal representative of a deceased person of an estate of equal size. It is incumbent upon the trustee to invest the money received by him under the trust (Civ. Code, sec. 2261), and if he omits to do so he must pay simple interest thereon if the omission is merely negligent, and compound interest if willful (Civ. Code, sec. 2262); not so with the personal representative, whose legal duty is, in the main, confined to assembling, taking possession of, and protecting the property of the deceased, and holding it for administration. He is not obliged to invest any part of it, and if he does so it is at his peril, except in cases, and they are few in number, where the statute permits it to be done with the approval of the court.

In view of what precedes, we cannot say that the court abused its discretion in making said award to the trustee, or that it was unreasonable.

Appellant's objection to the allowance of $75,000 to the trustee for the services of its attorneys, and to its payment

"ratably out of the *corpus* of the estate and from the fund accumulated for the benefit of Albert Duffill," as the same was distributed and received by it, presents a more difficult question. Appellant concedes that the attorneys should receive a reasonable fee, but stoutly contends that $75,000 is "grossly excessive" and unreasonable.

[5] The court found in accordance with the allegations of the report previously mentioned that the trustee entered into an agreement with its said attorneys "that their fees should be wholly contingent upon the preservation of the trust . . . , that it would be necessary that the court should fix and allow such fees as would be reasonable under all of the circumstances and that any fee paid to them should be approved by the court." This agreement, so far as the trust was concerned, did not, in our opinion, provide for a contingent fee as commonly understood, since under any and all circumstances the compensation was by its terms to be fixed by the court and be reasonable in amount. Obviously, if the trust was invalidated, there would be no funds with which to liquidate the fee, and it was therefore unnecessary to provide for such a contingency. In our judgment the contingent feature of the arrangement looked more to the protection of the Trust Company from the possibility of being obligated to pay a fee in the event of Harry's attack upon the trust being in all respects successful. The attorneys did not agree to advance the costs of the litigation, neither did the trustee undertake, without the approval of the court, to give them any portion of the estate or any amount whatever. Indeed, the agreement left the amount of the fee precisely where the law places it—in the discretion of the court, the same in any event to be reasonable. In California Jurisprudence (vol. 3, sec. 96, p. 698) it is said: "In determining what constitutes a reasonable [attorney's] fee, the court will take into consideration the following factors: The nature of the litigation, its difficulty, the amount involved . . . the attention given, [and] the success or failure of the attorney's efforts," authorities being cited from our appellate courts in support of each of these enumerated elements. The amount involved in the several controversies, in connection with which the services under review were rendered, was large, the nature of the litigation intricate, and in some of its aspects difficult.

It was skillfully conducted, and in its most particular part—the preservation of the trust scheme—successful. The record furnishes abundant proof of the learning, ability, and industry of the attorneys representing the different interested parties, although it is the professional services and ability of the attorneys for the respondents with which we are immediately concerned.

The proof of the services performed by the attorneys for the trustee was both documentary and oral, the former consisting of a brief filed by respondent in the matter of the estate of Eugenie A. Duffill, deceased, pending in the said superior court of the county of Los Angeles, upon the hearing of Harry Duffill's objections to distribution of said estate as asked in the petition for distribution, to which we have heretofore referred, copies of the transcript, briefs, petition for rehearing and reply thereto, filed in this court in the appeal of Harry Duffill from the decree of distribution in said estate (*Estate of Eugenie A. Duffill*, L. A. No. 5907); a typewritten transcript, copies of appellant's opening brief and respondent's reply thereto, filed in this court in the appeal of Albert Duffill (a minor), Martha Duffill, and the said Los Angeles Trust & Savings Bank from the decree of distribution (*Estate of Eugenie A. Duffill*, L. A. No. 5886). A comparison of said two briefs shows that the one filed by respondent's attorneys in said appeal No. 5886 was taken almost in its entirety from the one they filed in the superior court of Los Angeles County in the matter of Harry Duffill's objections to distribution in accordance with the will, so that it may be said that the real work of preparing both of said briefs was performed when the first was written. The subject matter of the brief filed by the attorneys for respondent in No. 5907, consisting of seventy-five pages, was new, and in the main not found in any prior brief offered in evidence. The oral testimony was mainly that of John W. Kemp, a member of the firm of Kemp, Mitchell & Silberberg, to which the fee in question will, if approved, be paid. He testified touching the services rendered by him and his associates as follows: The proceeding which, in effect, called for the interpretation of the will (of Eugenie A. Duffill) was filed on February 5, 1917, after the petition for distribution had been filed, and raised three questions: one, that the provisions for accumulations

were void; the other, that the inhibition of Harry's marriage to Mrs. McNamara was void, and the third, that the trust failed as a whole because of these alleged illegal provisions. Later in the litigation there arose the question as to whether or not certain stock dividends, which had been declared by the board of directors of the Grasselli Chemical Company, constituted principal or income. After the settlement of the preliminary matters the objections came on for hearing in July, 1917, and the taking of evidence and oral arguments, according to the recollection of the witness, consumed "three or four or five days." The matter was argued at great length by counsel for Harry Duffill, and "on behalf of the trustee by myself [John W. Kemp] and Mr. Mitchell," and the matter was finally submitted on briefs, Harry Duffill filing a brief of some ninety-five pages of typewritten matter. We answered with a printed brief of over one hundred pages. Later, in the summer of 1917, the other question in regard to stock dividends was raised, and the witness thinks, although not positive, reargued orally. In any event, the question was submitted on briefs. We took evidence as to the conditions of the Grasselli Chemical Company and its surplus on hand at various years prior to that time and up to the time of the declaration of these dividends. The matter was decided in the spring of 1918, but the decree was not agreed upon and signed until the 17th of July, 1918. After the decree was signed we had several conversations with the attorneys for Harry Duffill looking toward an adjustment by accepting the decree as it was. A settlement not being accomplished, both parties appealed, the particulars and results of which appeals have been previously stated. In this litigation I represented the trustee under the will, the Los Angeles Trust & Savings Bank. We were attorneys for the executor originally. We also represented the trustee, and we also appeared *formally* for the Los Angeles Trust & Savings Bank as guardian of the estate of Albert Duffill, and for Martha Duffill, one of the beneficiaries under the will. The time consumed in the litigation extended over a period commencing February 1, 1917, and ending September 1, 1919, "two years or thereabouts, and it took a good deal of time, necessarily, both myself and one other member of the firm—a great deal of our time—and at times other members of the firm and employees. It was a

very important case, one involving large interests, and we spent all the time that was necessary upon it—that we thought necessary. The value of the estate, based upon the valuation of $170 a share [capital stock of the Grasselli Chemical Company] at the date of the trustee taking it over was $1,001,160.00. That was the value of the *corpus* of the trust estate turned over to the trustee, which included the accumulations for the benefit of Albert Duffill, which at that time were worth $180,103.80. The *corpus* of the main trust for the benefit of both Albert and Harry was at that time $821,-056.71.'' The *corpus* of the trust estate was held jointly for the benefit of the two beneficiaries, Albert Duffill and Harry Duffill. Expert testimony was produced by respondent touching the reasonable value of the services performed by the attorneys for the trustee, but no evidence upon that branch 'of the controversy was offered by appellant in rebuttal. Mr. Bradner W. Lee, basing his opinion upon the testimony relating to the services rendered, all of which testimony was heard by him, declared that a reasonable fee would be ''anywhere from ten to fifteen per cent of the amount recovered to the trustee.'' Upon cross-examination he stated the basis for his opinion in these words: ''the trustee is charged with the duty of sustaining the trust . . . He starts . . . to recover by an action a certain fund which would not come to the trust except from his activities in the discharge of that duty, and he recovers the fund. I think then the percentage should apply on the fund so received . . . There was nothing, as I understood the testimony [that] would have come into the hands of the trustee except for his activity . . . the fee being upon a contingent basis I should say that in an estate of this size . . . that a fee of from ten to fifteen per cent under those circumstances would not be unreasonable.'' Mr. J. W. Anderson, after stating that he had heard the testimony touching the services of said Kemp, Mitchell & Silberberg to the trustee in sustaining the trust, said: ''Basing my answer upon that evidence, I would say ten per cent of the gross amount received by the trustee or saved to the trust would be a reasonable fee to be allowed such attorneys for that litigation as a contingent fee.'' Both Mr. Lee and Mr. Anderson are eminent members of the bar of California and thoroughly qualified to testify concerning the value of legal

services. [6] While, as contended by appellant, their testimony was not binding upon the trial court, which had the unquestioned power to fix the amount to be allowed for attorneys' fees, without, and independent of, expert testimony (*Estate of Dorland,* 63 Cal. 281; *Spencer* v. *Collins,* 156 Cal. 298–307 [20 Ann. Cas. 49, 104 Pac. 320]; *Zimmer* v. *Kilborn,* 165 Cal. 523–525 [Ann. Cas. 1914D, 368, 132 Pac. 1026]), it does not follow that the court should have wholly excluded this testimony from its consideration. The record discloses that the allowance made by the court was in fact less than that named by either of them.

*Walbridge* v. *Barrett,* 118 Mich. 433 [76 N. W. 973], and *O'Neill* v. *Crane,* 65 App. Div. 358 [72 N. Y. Supp. 812], mentioned in appellant's brief, substantially hold that the value of an attorney's services could not be augmented by the fact that they were to be performed gratuitously in the event the side of the litigation they represented was unsuccessful. Accepting, for the purpose of discussion, the pronouncement of these cases as the law, the fee allowed here does not fall within it. There is no presumption that the court gave any consideration to the contingent feature of the agreement. If such agreement contravenes the law, the presumption is that the court disregarded it. "The fact that the award happened to concur in part with the terms of the contract does not necessarily imply an enforcement of the contract." (*Estate of Willard,* 139 Cal. 501, 506 [64 L. R. A. 554, 73 Pac. 240].) While we must assume that the experts took into consideration the contingent element of the agreement and gave their opinion accordingly, the fact that the court fixed a less amount than named by them, respectively, would indicate that it was not controlled by their figures, and, eliminating its contingent aspect, adopted an amount which in its judgment was reasonable, which could be done without wholly rejecting the testimony of Messrs. Lee and Anderson.

In *Freese* v. *Pennie,* 110 Cal. 467, 470 [42 Pac. 978], this court said: "It is well, and it is the law, that the court should temper this kind of evidence [of attorneys testifying as experts] with its own calm judgment, based upon the amount and kind of labor performed, and to thereupon make its decree. When a court has done this, this court, as an appellate court, only has the right to interfere with its

judgment when a plain and palpable abuse of its discretion (for it has a large discretion in such matters) has occurred.'' The amount allowed in that case was $80,000.

Counsel for appellant cite *Estate of Page,* 57 Cal. 238, holding that an administrator is without authority to make a contract with an attorney to give him an interest in the property of the estate as compensation for recovering it. *Estate of Willard,* 139 Cal. 501 [64 L. R. A. 554, 73 Pac. 240], where this court refused to enforce a contract between an administrator and a real estate broker with respect to the amount the latter was to receive for his services, but held, which is important, that the court could nevertheless, in its discretion, make an allowance to the administrator for a reasonable compensation. These cases are easily distinguishable from the one at bar. Here, as previously stated, there was no contract for a definite amount, the only contingent feature of the arrangement being that unless successful the attorneys would not be compensated, and, above all, the amount of the fee was *expressly* left to the court.

Nor can we agree with appellant that the controversy concerning the accumulations, the condition in restraint of marriage, and the disposition of the stock dividends, had nothing to do with the trust or its protection, or the preservation of its property, and therefore should not be considered when ascertaining the fee. The two first mentioned conditions were among the provisions of the trust contained in the will, and the last was one of construction of the terms of the trust. It is our opinion that the trustee was not only justified in employing, but it was its duty to employ, competent attorneys to represent it upon the hearing of each of these important matters. The fact that in certain branches of the litigation the trustees were unsuccessful does not necessarily exclude the services performed by its attorneys in connection therewith from the consideration of the court when fixing the attorneys' fee.

[7] While the allowance we are considering impresses us as large—larger, perhaps, than we would have named had the fixing of it in the first instance been with us—nevertheless, in view of all the circumstances of the litigation, in connection with which it was allowed, its importance, the amount involved, and the extent and character of the services, we cannot say that there is present here a ''plain and

palpable abuse of discretion." In *Estate of Parker*, 186 Cal. 668 [200 Pac. 620], very recently decided, in speaking of an allowance made to an attorney for an executor for extraordinary services, we said: "But the allowance of attorney's fees for such services rendered in the probate of an estate rests largely in the discretion of the court in the first instance, and will not be reversed or modified, unless this court can plainly see and unequivocally say that the order under review is absolutely and unqualifiedly an abuse of discretion." To the same effect is *Estate of Iser*, 52 Cal. App. 405 [198 Pac. 1014]. This court, in *Freese* v. *Pennie, supra,* gave expression to the following, which embodies and adequately expresses the conclusion we have reached touching the fee here assailed: "While the fee allowed in the present case [*Freese* v. *Pennie*] is a very large one, still we think the judgment must stand. It appears that the allowance made is less than the estimate of any witness who testified, and such fact indicates that the trial court did not consider itself absolutely bound by the expert testimony presented. Under these circumstances we cannot say that the allowance is clearly and palpably too great." To the same effect is *Estate of Adams*, 131 Cal. 415, 418 [63 Pac. 838], where it is said: "The order of the lower court as to attorneys' fees will not be interfered with, except in case of a plain abuse of discretion."

The appellant urges that the trial court was wrong in deciding that the services performed by the attorneys for the trustee "were rendered in the defense of the validity and in protection of the trust itself and for the purpose of preserving and protecting the validity of said trust and for the benefit of the beneficiaries thereof, and inured to the benefit of said entire trust." He concedes that the services rendered in the litigation, to which we have referred, were very valuable to Albert Duffill and Martha Duffill, but affirms they were in the main, if not wholly, opposed to his pecuniary interest, and for that reason to his injury rather than to his advantage. He urges that the compensation of the attorneys for the trustee must be determined and apportioned according as the services helped or injured the different beneficiaries of the trust. Granting that this may be the rule under some conditions, it is not applicable here. The professional efforts and services of the attorneys were in

this instance directed to the preservation of the trust in its entirety, a duty imposed upon the trustee, whom they represented, irrespective of whether, if upheld or only partially upheld, the result might be more beneficial to some than to others who are interested therein; or harmful financially to some of those who are beneficiaries under its provisions, because, if abrogated, they would, under the laws of succession, receive a larger portion of the estate than they take under the trust. [8] The appellant assailed the validity of the entire trust, against which attack it was the duty of the trustee to defend, and which it did defend, with the result that though some of Harry's contentions were sustained, the general *scheme* of the trust was nevertheless preserved. Under such circumstances we can see no good reason for holding that the attorneys for the trustee should not be compensated for the entire service. By accepting the trust, which the facts indicate was done here, the trustee became bound to execute it (39 Cyc. 293), and to fulfill the purpose of the trust as declared at its creation. (Civ. Code, sec. 2258.) In Pomeroy's Equity Jurisprudence (3d ed., sec. 1085), the rule is thus declared: "The trustee is entitled to be allowed . . . all expenses reasonably necessary for the security, protection, and preservation of the trust property, *or for the prevention of a failure of the trust.*" (Italics ours.)

In *Estate of Gartenlaub,* 185 Cal. 375 [16 A. L. R. 520, 197 Pac. 90], we adopted the following, taken from 39 Cyc. 339, as being a correct exposition of the law: "The rule which has been applied in a great variety of cases affecting the administration and execution of trusts is that a trustee has a right, whenever necessary to the proper administration, *preservation,* and execution of the trust and the prosecution or defense of an action, to employ counsel and to be reimbursed from the trust estate for whatever sums he has paid for the services of such counsel. The rule is applicable even though the *cestui que trust* employed counsel to represent the same interests, and although, to a certain extent, the private and personal interests of the trustee may also be involved in the litigation." (Italics ours.) In view of the duty of the trustee, which it may be said spoke for and represented Eugenie A. Duffill, deceased, the maker of the trust, to uphold and defend the trust as a whole, which

includes its several provisions, we are not impressed with appellant's contention that the trustee should not be allowed compensation for its attorneys, to be paid them for services performed in an effort to preserve the trust *as a whole,* because some one or more features forming part of the entire scheme were held to be invalid.

Our conclusion, therefore, is that there is sufficient evidence to support the finding of the trial court as to the value of the services of, and the allowance made to, the attorneys for the respondent trustee.

[9] Appellant's next point is directed to the legality of that portion of the order requiring said $75,000 to be paid ratably out of the *corpus* of the trust estate and, from the fund accumulated for the benefit of Albert as the same was received by the trustee from the executor, the result of which was, so appellant affirms, to impose a charge of approximately $30,000 upon his property rights and interest "for services rendered against him and to that end that those property rights might be destroyed," and in support of his contention appeals to the maxim "he who takes the benefit must bear the burden" (Civ. Code, sec. 3521). The theory is that the trustee's efforts to preserve the trust were exclusively for the benefit of Albert and Martha in that, had it been destroyed in its entirety, they would have received nothing from the estate of Eugenie A. Duffill, deceased, since, under such circumstances, all of her property, with the exception of a few specific bequests, under the laws of succession would have gone to Harry. We think, however, that the rule applicable here is, that the trust estate is chargeable with all expenditures incurred in the interest of the beneficiaries (*Somerset Ry.* v. *Pierce,* 98 Me. 528 [57 Atl. 888]), and that such interest is determined and ascertained, not from what they or anyone of them might receive if the trust was destroyed, but by and from what they take under the terms of the trust. Our code provides that "a trustee is entitled to the repayment, *out of the trust property, of all expenses actually and properly incurred* by him in the performance of his trust." (Civ. Code, sec. 2273.) Unquestionably, when proceedings are commenced attacking the validity of a trust, it is the right, and under circumstances similar to those appearing here the duty, of the trustee to secure legal assistance, and it is equally be-

yond doubt that the facilities to command such assistance should not be narrowed, if not entirely destroyed, by any such restriction as that compensation for such assistance is wholly dependent upon, and measured by, the degree of success.

While under ordinary conditions the accustomed expenses incurred in the administration of a trust are payable from the income, extraordinary and unusual expenses are payable from the *corpus* of the trust (*Estate of Gartenlaub, supra*). In *Cogswell* v. *Weston*, 228 Mass. 219 [117 N. E. 37], it is said: "The regular annual or periodically recurring expenses arising in the administration of a productive trust commonly are paid out of the income, while extraordinary and unusual expenses are chargeable against the capital. The costs of litigation generally fall in the latter class." We are satisfied that the attorney fee here involved was an extraordinary expense. While it is debatable whether any part of the allowance to the trustee of an attorney's fee should have been ordered paid from the fund accumulated for the benefit of Albert Duffill, which, we understand, is made up of his share of the net income, we are not called upon to consider that question, as Albert makes no objection to the apportionment.

[10] We can find no merit in the argument that Harry's interest in the *corpus* should contribute no part of the fee of the attorneys for the trustee, because he was obliged to compensate his personal counsel who represented him in his effort to secure the complete annulment of the trust. (*Estate of Gartenlaub, supra.*)

Appellant refers to a large number of cases which he affirms reflect the principle lying at the base of, and which sustains, his contention that his interest in the trust should not be burdened with any portion of the attorney fees. The facts of none of those cases are analogous to the facts shown here, and for that reason they are not controlling.

Finally, the appellant insists that the record confirms the claim, which he makes, that in substantially all of the litigation and proceedings in which the trustee participated, and for the conduct or defense of which the trustee employed the attorneys to whom the fee in question will be paid, and in some of which controversies Martha and Albert Duffill appeared, the trustee espoused their cause as against

him, and in some instances its attorneys actually represented them in the litigation, and for that reason his interest in the *corpus* of the trust estate should not be subjected to the payment of any part of the fee. The court found that Kemp, Mitchell & Silberberg represented said Los Angeles Trust & Savings Bank as trustee, Martha Duffill, and Albert Duffill by Los Angeles Trust & Savings Bank, his guardian, in the said proceeding involving the validity of the trust, both upon the trial and in the two appeals from the judgment, but a survey of the entire record satisfies us that in reality the services of the attorneys were exclusively rendered to the trustee, and that their separate appearance on behalf of Martha and Albert was formal and gratuitous—part of the general plan of resistance to Harry's attack upon the trust. Such was the undisputed testimony of Mr. Kemp, who declared that the appearance of his firm for Albert and Martha was merely formal. In response to the question propounded by the attorneys for Harry, if he was not seeking "to have one attorneys' fee fixed and settled for all those persons [trustee, executor, Martha, and Albert] that you represented," he replied, "we are seeking to have the attorneys' fee fixed for the trustee." The court found the services of said attorneys were rendered to the trustee and the order of the court recited that the amount allowed to the trustee was "for the said services of said attorneys." *Bailey* v. *Buffalo Loan etc. Co.*, 213 N. Y. 525 [107 N. E. 1043], S. C., 214 N. Y. 689 [108 N. E. 561], cited by appellant to the point that the trustee will not be allowed an attorney's fee where it joins with certain beneficiaries against another beneficiary who is contesting the validity of the trust and is ultimately successful, while in many of its facts similar to the one at bar, is unlike it in these important and distinguishing particulars, namely, there the trust was wholly abrogated, while here the trust was preserved. There, as said by the court, "As the attempted trust was invalid, the funds constituting the same passed under the will to the plaintiff as residuary legatee. *As against him, the Trust Company has no claim or right to the fund*" (italics ours) (213 N. Y. 520 [107 N. E. 1043]), while here the trust was sustained with the result that the funds of the trust remained in the hands of the trustee. There (214 N. Y. 689 [108 N. E. 561]) it was

declared, and therein lies the fundamental difference between that case' and this, ''As the plaintiff was finally successful, we determined that the action [defending the trust] of the Trust Company did not justify an award of costs or an allowance to it to be paid by plaintiff, the successful party.'' Here the trustee was successful in preserving the trust, which was the main and dominant issue, although some of its specifications and provisions were adjudged to contravene the law.

For the foregoing reasons we hold that the evidence supports the findings and decree of the trial court, and that the record is free from reversible errors.

Judgment affirmed.

Waste, J., Sloane, J., Richards, J., *pro tem.*, Lawlor, J., Wilbur, J., and Shaw, C. J., concurred.

Rehearing denied.

All the Justices concurred.