[Civ. No. 13286.   First Dist., Div. Two.   Apr. 30, 1947.]

Estate of ROBERT F. LOPEZ, Deceased.   WINIFRED LEONARDINI, Appellant, v. WELLS FARGO BANK & UNION TRUST CO. as Trustee, etc., Respondent.

Eric Lyders for Appellant.

Wright & Larson for Respondent.

GOODELL, J.—The respondent trustee filed in the superior court its first account and report in each of two trusts created by the will of Robert F. Lopez, deceased, covering the period from December 29, 1944, to December 29, 1945. In the orders settling the accounts the court allowed compensation to the trustee and its attorneys for their services during said first year of administration and charged one-half thereof against the corpus and one-half against the income, of the respective trusts. From those orders this appeal was taken.

Robert F. Lopez died in 1936. The provisions of his will creating the two trusts were incorporated into a decree of partial distribution entered on December 29, 1944.

The Lopez estate consisted almost entirely of a contingent interest in a trust known as the Evans trust, administered in the State of New York, the beneficiary of which was Mary Evans, a sister of Robert. Mary Evans died on July 15, 1944, whereupon testator's contingent interest ripened into an actual interest. By his will the testator created the Leonardini trust, consisting of the residue of his own small estate *and* a one-quarter share of his contingent interest in the Evans trust. Appellant is the life beneficiary thereof, and on her death the corpus goes to her son. The Leonardini trust is valued at approximately $300,000 according to the statement on appeal.

By his will the testator also created the Kirby trust, the corpus whereof is a one-sixteenth share of decedent's contingent interest in the same Evans trust. Claribel H. Kirby is the life beneficiary, and on her death the corpus goes to appellant or in case of her death to her son. The Kirby trust is valued at approximately $75,000 according to the statement on appeal.

In the Leonardini trust the court allowed $1,105.30 for the trustee's services during the initial year of its administration and $250 for its attorneys. In the Kirby trust the allowances were $318.07 to the trustee and $50 to its attorneys for the same period.

The appellant's contentions are "1. That the trustee may not impair the principal of the trust estate by paying therefrom compensation for itself and its attorneys but must pay such out of the income, and, 2. That the amount of compensation allowed the trustee is excessive and unreasonable. . . ."

The testamentary provision creating each trust provides:

"2. The said trustee shall collect and receive any cash dividends which may be declared on any shares of the capital stock of any corporation held by said trustee and any other income issues and profits of the property of the said trust fund and shall dispose of all such cash revenue from said trust fund.

"(a) By first paying out therefrom all calls made or assessments levied on any of said shares of capital stock, and all taxes, state, county, or municipal, or other local taxes, levied or assessed on the property of said trust fund, including income taxes and the reasonable expenses of this trust which shall include the reasonable compensation of said Trustee for its service as Trustee hereunder, and the reasonable compensation of any attorney employed by said Trustee in the administration of said trust fund; and

"(b) By paying out therefrom the surplus to [the life beneficiary, naming her] for her support and maintenance during her life."

Appellant contends that the provisions of paragraph (a) that the net income shall be arrived at after the deduction, *inter alia,* of the trustee's and attorneys' compensation from the gross income so circumscribes the court's action that it cannot make any charge whatever against corpus. She also invokes section 2 of the Principal and Income Act (Stats. 1941, p. 2476; 3 Deering's Gen. Laws, Act 8696) which provides that:

"This act shall govern the ascertainment of income and principal, and the apportionment of receipts and expenses between tenants and remaindermen, in all cases where a principal has been established with . . . the interposition of a trust; except that in the establishment of the principal provision may be made touching all matters covered by this act, and the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee or other person to do so, and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this act."

The year covered by these two accounts, it must be remembered, was the first year of the administration of both trusts. The duties of the trustee and its attorneys during that first

year embraced the acceptance of the trust property which, in turn, involved putting both trusts into operation, the determination of questions of corpus and income in organizing the trust funds, the settling of tax problems consequent upon the new administration, setting up the necessary accountancy machinery, and in the case of the Leonardini trust, the purchase of a home in Stockton for the use and occupancy of Mrs. Leonardini, the life beneficiary. None of these can be classified as ordinary, routine, recurring, or year-round duties any more than the tasks connected with the distribution or winding up of a trust can be.

Section 12 of the act provides that the trustee's compensation upon or for acceptance or distribution of principal shall be paid out of principal. The court, acting under this authorization might have charged against principal more than one-half of the compensation. Respondent relies on section twelve (1) which provides that "attorney's fees for ordinary or current services and trustee's compensation for both ordinary and extraordinary services, exclusive of compensation for acceptance or distribution, shall be paid one-half out of income, one-half out of principal, or in such other proportion as the court may direct; . . ." As we view this case it is not necessary for us to decide whether or not the court's action was taken under the Principal and Income Act.

In *Estate of Kruce,* 10 Cal.App.2d 426 [51 P.2d 1174], the testamentary provision was not substantially different from that in paragraph 2(a) of the Lopez will quoted above. It was that the net income should be paid to the daughter after deducting "all necessary taxes, costs and expenses, including the compensation of said trustees. . . ." It was contended that under this provision expenses on distribution had to be charged against income. The court said, page 430: "We do not agree that the will should be given this construction. It is not questioned that in the absence of contrary testamentary directions the ordinary and current expenses of a trust, including the trustees' compensation, should be paid out of income and that extraordinary and unusual charges should be paid from the *corpus* of the estate. (*In re Woods,* 6 Cof.Prob.Dec. 451; *Estate of Dare,* 196 Cal. 29, 42 [235 P. 725] ; *Estate of Gartenlaub,* 185 Cal. 648, 655 [198 P. 209, 16 A.L.R. 520].) We do not think the provisions of the will depart from this rule. *The direction of the will would seem to apply to the current compensation and expenses of the trustees and not to any-*

*thing of an extraordinary nature.* The services for which the allowances were made consisted of closing the trust and distributing the property remaining therein after the death of the life tenant. They were performed necessarily for the benefit of the remaindermen and were unrelated to the management of the trust for the benefit of the life estate. *They were not such ordinary and current expenses as would have to be deducted from the income periodically in order that the net income might be computed and paid to the life tenant each month as directed by the will.''* (Emphasis added.)

The language just quoted is particularly applicable to this case and we think is controlling. The law as restated in *Estate of Kruce* has been well settled for a long time. In addition to the cases cited in the Kruce opinion see *Estate of Duffill,* 188 Cal. 536, 557 [206 P. 42], and *Estate of Lair,* 52 Cal.App.2d 222, 225 [126 P.2d 133].

In the case at bar the court apportioned the allowances half to principal and half to income. Without the new legislation the court might well have made the selfsame apportionment in the exercise of a discretion which it always has had (Prob. Code, § 1122; *Estate of Duffill, supra; Estate of McLellan,* 8 Cal.2d 49, 55 [63 P.2d 1120], and cases cited above).

Appellant also attacks the allowances as excessive and unreasonable. In discussing the first point it appears, we believe, that a considerable part of the trustee's and attorneys' services for the first year were not at all ordinary or recurring services, but were extraordinary in the very nature of things. If so, they merited higher than ordinary compensation. The allowances to the attorneys of $250 in the $300,000 trust estate and $50 in the $75,000 trust estate cannot, within reason, be criticized. As far as the trustee's compensation is concerned there is no basis for a comparison of its services during the first year of the trusts with services rendered by an executor or administrator in administering an estate in probate. *Estate of Duffill,* 188 Cal. 536, 547 [206 P. 42] directly so holds. The size of such fees is within the sound discretion of the court (*Estate of McLellan,* 8 Cal.2d 49, 55 [63 P.2d 1120]) and we find no abuse of discretion in this case.

In addition to appealing from the orders settling and approving the two accounts, appeals were taken from the order denying the motions to vacate and set aside such or-

ders: The last-named orders are not appealable (Prob. Code, § 1240; *Estate of Spafford,* 175 Cal. 52 [165 P. 1]; *Howard v. Superior Court,* 25 Cal.2d 784, 787 [154 P.2d 849]) and as to them the appeal is dismissed.

The orders settling the two accounts and approving the trustees' reports are affirmed.

Nourse, P. J., and Dooling, J., concurred.