In the Matter of the Claim for Benefits under Article 18 of the Labor Law, Made by ADAM BATTER, Claimant.

FRIEDA S. MILLER, as Industrial Commissioner, Appellant; MORTGAGE COMMISSION SERVICING CORPORATION, Employer, Respondent.

Third Department, July 11, 1939.

John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor-General, W. Gerard Ryan, Francis R. Curran, Assistant Attorneys-General, of counsel], for the appellant.

Maurice Finkelstein [Michael F. Dee, Louis Glickhouse and Arthur Rosenberg of counsel], for the respondent.

SCHENCK, J. The Unemployment Insurance Appeal Board has held as a matter of law that the claimant, Adam Batter, did not perform work in covered employment and has disallowed his claim for unemployment insurance. Claimant was employed by The Mortgage Commission Servicing Corporation as an auditor and his employment was terminated by reason of substantial decreases in respondent's business. The sole question involved is whether the Mortgage Commission Servicing Corporation is a governmental subdivision and exempt as an employer from the provisions of the Unemployment Insurance Law.

It is the contention of the Industrial Commissioner that the Mortgage Commission Servicing Corporation, as distinguished from the Mortgage Commission, is not a governmental subdivision within the meaning of the law and, therefore, is an employer subject to the provisions of the Unemployment Insurance Law. The Mortgage Commission Servicing Corporation is a subsidiary of the Mortgage Commission. Undoubtedly, the Mortgage Commission is exempt from the provisions of the Unemployment Insurance Law, which provides, so far as here pertinent, in subdivision 3 of section 502 of the Labor Law: " The State of New York, municipal corporations and other governmental subdivisions, and any corporation, unincorporated association, community chest, fund, or foundation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, shall not be employers subject to this article."

The Mortgage Commission was created by chapter 19 of the Laws of 1935, the then Legislature declaring that a public emer-

gency existed which necessitated the enactment of the Mortgage Commission Act. The Legislature in its declaration of policy pointed out that thousands cf issues of mortgage investments were outstanding, having been distributed or guaranteed directly or indirectly by title or mortgage guaranty corporations, that they were in default by reason of non-payment of interest or taxes and that the foreclosure of all defaulted mortgages would ruinously affect owners of real estate generally and holders of mortgages or other mortgage investments thereon. The Mortgage Commission Act made provision for a State agency, the Mortgage Commission, a body corporate and politic, consisting of three members appointed by the Governor. Its purpose was to take over from the Superintendent of Insurance and the Superintendent of Banks all mortgages and properties against which mortgage certificates had been issued to the public by guaranty corporations, for rehabilitation or liquidation. Upwards of fifteen thousand properties and mortgages were taken over by the Mortgage Commission for the purpose of administering the properties and underlying mortgages on behalf of the mortgage certificate holders. Its duties included the collection of interest, the enforcement of payment of taxes, the prosecution of foreclosures and the mangement generally of real estate. The Commission was given power to organize such subsidiary corporation or corporations wholly owned or controlled by it as it might deem proper. (Mortgage Commission Act, § 4, subd. 22.) With this statutory authorization, the Commission organized the Mortgage Commission Servicing Corporation, the capital stock of which is held entirely by the members of the Mortgage Commission, who are also its directors, and its life is limited to that of the Commission.

It would appear that the Servicing Corporation is a separate corporation engaged in business activities. It engages in and conducts the business of servicing, managing, supervising and operating real estate or other property. It leases property, buys and sells mortgages and acts as receiver of rents or profits. In other words, it operates as a private corporation and not as a State agency engaged in the exercise of a governmental function. True, the Mortgage Commission could have carried out the same functions delegated to the Servicing Corporation, but it did not see fit so to do. All of the expenses incident to the management of the properties and servicing mortgages are borne by the properties and all of the taxes and costs of repairs and insurance are charges against the property, including the wages of the claimant and the wages of all other employees hired by the Servicing Corporation. On the other hand, wages and salaries of the employees of the Mortgage Commission are paid out of the general funds of the State.

After the Servicing Corporation has paid its expenses involved in the maintenance of the properties and the servicing of mortgages, any profit remaining is distributed to the mortgage certificate holders. This claimant, as an employee of the Servicing Corporation, did not have the benefits of civil service protection, the benefit of the retirement system, nor the security afforded by the financial backing of the State. I fail to see where this claimant was an employee of the State in any sense of the word. Nor is the Servicing Corporation subject to the provisions of the State Finance Law. It does not turn over to the Department of Taxation and Finance for deposit the moneys received by it; nor is its money withdrawals and expenditures subject to audit by the Comptroller. It does not purchase its supplies through the Bureau of Standards and Purchase, and does not deposit its papers in the office of the Comptroller. If the claimant here is denied the protection of the civil service and the benefits of the State Retirement Fund, he should be allowed the protection afforded by unemployment insurance. He performed work for the benefit of the certificate holders of mortgages serviced by the Servicing Corporation and was not performing services for the State, except as the rehabilitation of the certificate issues inured to the benefit of all of the people.

In *White* v. *Boland* (254 App. Div. 356) it was held that the employees of buildings taken over by the Superintendent of Banks, as liquidator, were not subject to laws relating to State employees. The Superintendent of Banks, as liquidator, operated certain properties for the purpose of making distribution of the assets of the closed bank to its creditors and shareholders. The Superintendent of Banks, as liquidator, continued to employ certain persons formerly employed to operate the properties. In its opinion the court said (at p. 360):

" The employees in question are paid out of private and not public funds, specifically out of the funds received from the operation of the respective buildings themselves or, if such funds are insufficient, out of the general assets of the estate of the bank in liquidation. (Banking Law, § 63.) Neither the State of New York nor its treasury is liable for any of the wages of these employees. Profits or losses on the operation of the buildings will not increase or decrease the funds of the State of New York but the amounts payable to the depositors and creditors of the bank.

" Prior to the taking over of the properties by the liquidator, these employees were concededly private employees working for the benefit of the private owners. After the properties were taken over, the employees in question continued the same services in the same buildings, changes in personnel being due to the usual reasons:

resignation, discharge or replacement of individual employees, but the employment was in no way regulated or determined by the Civil Service Law of the State or other laws relating to State employees. They continued to work for the benefit of private individuals subject only during the temporary possession of the Superintendent to his control exercised for the purpose of conserving the assets of the closed bank for ultimate distribution to its creditors and depositors and shareholders.

" Such employees are not held to be employees of the State or any agency thereof for the purposes of other statutes relating to State employees, *e. g.*, the Civil Service Law, the New York Unemployment Insurance Law, the Social Security Law of the United States, laws relating to taxation of various kinds, *e. g.*, Federal income taxes, from which State employees are normally exempt, the Workmen's Compensation Law (which, according to its terms, includes the State of New York as an employer, section 2). For the purposes of these and other statutes the properties in question have been uniformly considered subject to the obligations and liabilities of private institutions, and the Superintendent himself, under such statutes, has treated these very employees as not employees of the State. The anomalous and onerous consequences that would follow from treating them otherwise are too obvious to require mention. To hold these persons not to be State employees for the purposes of all other statutes and yet to classify them as such solely for the purpose of excepting them from the State Labor Relations Act is in our opinion contrary to the purpose of section 715 and the public policy of the State."

It follows that if the employees of the Superintendent of Banks, as liquidator, are not State employees, then the employees of the Mortgage Commission Servicing Corporation, whose work is of the same general character, are likewise not employees of the State. In neither case is the State liable for any of their wages, nor do they derive the benefits of the civil service. As a matter of fact, this claimant was called upon to pay and did pay a Federal income tax. In *White* v. *Boland* (*supra*) the Superintendent of Banks was acting as liquidator. He engaged certain employees to perform certain services, presumably under his supervision. They were not paid by the State, and the court held that they were not State employees subject to the provisions of the Civil Service Law.

In *Wolff* v. *Mortgage Commission* (270 N. Y. 428) the court held that the assumption of control of certain property by the Mortgage Commission creates a relationship similar to that created under statutory receivership, and refers to the Mortgage Commission as a statutory trustee.

True, the Mortgage Commission could perform all of the duties of the Servicing Corporation. This, however, it did not do, and these duties were delegated to a subsidiary, which is now claimed to be a government subdivision and an exempt employer within the meaning of the Unemployment Insurance Law. I cannot subscribe to such contention. The courts, generally, have refused to favor exemption and will not countenance immunity from contribution unless the language of the statute is clear and unambiguous. (*County of Herkimer* v. *Village of Herkimer*, 251 App. Div. 126.) That case referred to numerous parcels of land located in the village which had been bid in by the county treasurer upon a tax sale, and the court held that such lands were not exempt from taxation and stated that a grant of immunity to persons who, or property which, would otherwise be liable to assessment is never presumed and would not be recognized unless granted " in terms too plain to be mistaken." Mr. Justice EDGCOMB writes (at p. 127):

" It is the policy of the law to require all property to bear its just share of the expenses of government. That is a just and equitable rule. Unless expressly exempt by statute, all real estate, no matter by whom it is owned, is taxable. (Tax Law, § 3; *People ex rel. Gould* v. *Barker*, 150 N. Y. 52, 56; *People ex rel. Savings Bank of New London* v. *Coleman*, 135 id. 231, 234.)

" ' An exemption from taxation is in the nature of a renunciation of sovereignty. It relieves one class of persons or property from its obligation to bear its share of the expenses of government, no matter how deserving of assistance that class may be, and throws a correspondingly heavier burden upon all other classes, thus creating an inequality of taxation. It is for this reason that the courts have uniformly refused to favor exemptions, and have invariably construed statutes freeing property from the burden of enforced contribution to the expense of maintaining the government most rigidly against the claimant, and have declined to countenance such immunity unless the language of the statute is clear and unambiguous, and unless the purpose of the Legislature to exempt such property indisputably appears.' (*Matter of Board of Education of City of Jamestown* v. *Baker*, 241 App. Div. 574; affd., 266 N. Y. 636.)

" A grant of immunity to persons who, or property which, would otherwise be liable to assessment is never presumed. It will not be recognized unless granted in terms too plain to be mistaken. If there is any doubt as to the intent of the Legislature, it must be resolved in favor of the taxing power."

Contributions made to the unemployment insurance are taxes (*Chamberlin, Inc.*, v. *Andrews*, 271 N. Y. 1), and the rule that the courts will not countenance exemptions unless the purpose of the

Legislature to allow the same " indisputably appears," must be followed here.

The decision of the Appeal Board should be reversed and the claim for benefits by the claimant herein be allowed.

HILL, P. J., CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Decision reversed and matter remitted for action in accordance with the opinion, with costs to the appellant against the employer, respondent.