[Civ. No. 10358. First Appellate District, Division Two.—January 19, 1938.]

CLARA WILDE MESTRES, Appellant, v. CALIFORNIA MUTUAL BUILDING AND LOAN ASSOCIATION et al., Respondents.

John H. Thomsen and J. W. Lenahan for Appellant.

D. T. Jenkins and Walter Carrington for Respondent.

NOURSE, P. J.—Plaintiff sued for specific performance to compel the defendants to transfer to her certain real property. The defense rested on the claim that the agreed purchase price had not been tendered. The defendants had judgment.

Prior to November, 1935, plaintiff owned certain real property on which defendant association held a first deed of trust which it had instituted proceedings to foreclose. About November 12, 1935, plaintiff deeded the property to defendant association and, contemporaneously with the delivery of the deed, signed an offer to repurchase the property for an agreed purchase price of approved claims against the association of $22,300 face value. On November 27, 1935, defendant building and loan commissioner engaged in the liquidation of defendant association, accepted said offer to purchase, subject to approval of the superior court in which the liquidation proceeding was pending, and on December 2, 1935, petitioned said court for authority to make said sale. The petition came on for hearing, and on December 10, 1935, the court made its order authorizing the sale, wherein it directed: That 45 per cent of the face value of approved claims against the association be fixed and determined as the cash surrender value thereof, and that same be accepted upon that basis in payment for the property; that the commissioner was authorized to sell said real property to plaintiff and accept in payment therefor approved claims against the association having a minimum face value of $22,300.

On the same day, December 10th, as the above order authorizing sale to plaintiff was made, the same court authorized defendant commissioner to pay a liquidating dividend of 5 per cent upon all outstanding approved claims of the association, and on the next day, December 11th, the commissioner paid such liquidating dividend. On the claims used by plaintiff to purchase the real property the dividend amounted in the aggregate to $935.12. On January 10, 1936, plaintiff tendered to defendant commissioner and association said approved claims, having a minimum face value of $22,300, but without crediting, however, said dividend of $935.12 paid thereon. Defendants refused the tender, lacking the $935.12.

Appellant's theory is that the whole contract between the parties was contained in the offer to purchase of November 12, 1935, the acceptance of November 27th, conditioned

upon court approval, the petition for an order authorizing the sale, and the order of authorization of December 10th. She contends that the demand thereafter for the $935.12 was an attempt to rewrite the contract, and that her deposit of approved claims of $22,300 face value was a "full compliance" of her obligation, entitling her to a deed to the property. According to appellant, when she learned of the order of December 10th approving the sale, she immediately contracted with brokers for the purchase thereof an amount of $22,300 face value; the dividend checks had been prepared and dated as of December 2, 1935, and appellant contends that they were disbursed to strangers to the transaction.

Respondents argue that appellant fails to recognize the obvious fact that every payment of a liquidating dividend reduces the face value of the claim by just that amount and, this being so, the claims tendered by appellant were not the claims contracted to be tendered.

The trial court expressly found that "said 5% liquidating dividend was in truth and in fact a partial distribution of the assets of said Association in liquidation . . . that the payment of said 5% liquidating dividend as aforesaid reduced the cash surrender value of all approved claims against said Association from 45% of the face value thereof to 40% of the face value thereof."

The rights of the parties are controlled by these principles: The respondent association was under process of liquidation, and hence the entire transaction is governed by the Building and Loan Association Act. (Gen. Laws, Act 986.) Section 13.16a of that act (added in 1933, Stats. 1933, p. 1119) authorizes the commissioner to accept approved claims against any association in payment for real property of the association, such claims to be accepted "at their respective surrender values as estimated by the commissioner and fixed and determined by the court". Since the mode is the measure of the power this mode must be deemed to have entered into the contract of the parties. It was so considered in the court order approving the sale wherein the cash surrender value was fixed at 45 per cent of the face value of the approved claims which the commissioner was authorized to accept in payment for the property. If this was a qualified acceptance of appellant's offer it was approved and consented to by her when she thereafter deposited the claims and demanded a transfer of the property to her. It is conceded

that the payment of the "dividends" upon these particular claims reduced their cash surrender value to 40 per cent. Hence, the commissioner was without power to accept such claims in full payment, and the court was without power to grant appellant's prayer for specific performance and thereby require the commissioner to do an act which the law specifically forbade.

Some confusion seems to have arisen from the frequent use of the word "dividends" to describe the payments which were made pending the transaction. This term is commonly used to designate the share of profits to be apportioned among stockholders, as well as the portion of assets to be distributed to creditors. In the first sense the payment of the dividend, like the payment of interest, results in no reduction of the principal; in the latter sense the payment is more in the nature of an instalment with a corresponding reduction of principal. Here the word was used in the latter sense and when these "dividends" were paid the face value of the claims was reduced in that amount. Hence, when the appellant tendered these approved claims, their "face value" was just so much less than the sums indicated thereon. The fact that the commissioner had not had the opportunity to mark the reduction on the "face" of each claim is of no importance since the appellant concedes that there is no issue of surprise, and no claim is established of mistake, lack of knowledge or unfair practice.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.