WILLIAM R. WHITE, as Superintendent of Banks of the State of New York, Plaintiff, *v.* JOHN P. BOLAND and Others, as Members of the New York State Labor Relations Board, FRANK GAGELMAN, Individually and as President of Building Employees Industrial Union of America, and JAMES J. BAMBRICK, Individually and as President of Building Service Employees International Union New York Local 32-B Affiliated with the American Federation of Labor, Defendants.

First Department, June 10, 1938.

*Carl J. Austrian* of counsel [*Edward Feldman* and *Isadore H. Cohen* with him on the brief], for the plaintiff.

*Burton A. Zorn* of counsel [*Edward Maguire, Oscar Merber* and *Eugene Cotton* with him on the brief; *Burton A. Zorn, General Counsel, New York State Labor Relations Board; Rice & Maguire,* attorneys for Building Service Employees International Union, Local 32-B; *Oscar Merber,* attorney for Building Employees Industrial Union of America], for the defendants.

Dore, J. The Superintendent of Banks of the State of New York, the State Labor Relations Board and two building service employees' unions submit their controversy to this court on an agreed statement of facts pursuant to sections 546–548 of the Civil Practice Act, and ask the court for a declaratory judgment on the issue presented. (Civ. Prac. Act, § 473.) The controversy involves certain service employees engaged in the operation and maintenance of the San Remo and Beresford Apartments, assets of the Bank of United States in liquidation, the Superintendent of Banks acting pursuant to statute as liquidator thereof.

Pursuant to section 705 of the Labor Law, two unions, defendants herein, made separate applications to the State Labor Relations Board to investigate and certify a collective bargaining representative of the employees engaged in the operation of the apartments in question. Section 705 of the New York State Labor Relations Act requires the Board to undertake such investigation and to issue a certificate, whenever it is properly alleged that a question or controversy concerning the representation of employees has arisen.

Section 715 of the Labor Law provides that " the provisions of this article shall not apply to the employees * * * of the State or of any political or civil subdivision or other agency thereof."

The issue presented to this court for its determination is whether the maintenance employees engaged in the operation and care of the two named apartment houses constitute " employees * * * of the State or of any political or civil subdivision or other agency thereof," so as to be excepted from the provisions of the New York State Labor Relations Act. (Labor Law [Laws of 1937, chap. 443], §§ 700–716.)

Plaintiff claims that the persons employed in the operation of the Beresford and San Remo Apartments are employees of the State of New York or an agency thereof within the meaning of section 715 of the Labor Law, and that, accordingly, the State Labor Relations Board has no jurisdiction to make any investigation or to certify a collective bargaining representative or to issue any order under the provisions of the State Labor Relations Act which will in any way affect such employees.

The defendants claim that the State Labor Relations Board has jurisdiction in the premises and may in a proper case issue any order justified by the provisions of the Labor Relations Act.

On December 11, 1930, the Superintendent of Banks took possession of the business and property of the Bank of United States, and since that date has, pursuant to statute, been acting as

liquidator of its assets. Among the bank's assets at the time of closing were many parcels of real estate, and other parcels have since been acquired by plaintiff in connection with the liquidation of loans and mortgages due the bank. Pending the sale of these parcels and the termination of the liquidation proceedings, it has been necessary for the Superintendent as liquidator to service and maintain these properties, including the San Remo and Beresford Apartments. Title to such properties is retained by the Superintendent in the name of the closed bank or its subsidiaries. Title to the San Remo Apartments is in the New San Remo Realty Corporation organized by the Superintendent, all the stock of which is held by him for the benefit of the creditors and depositors of the Bank of United States. Title to the Beresford property is in a corporation known as the Manhattan Square Beresford, Inc., all the stock of which is also held by the Superintendent in the name of a nominee for the ultimate benefit of the same depositors and creditors.

On March 1, 1934, the Superintendent of Banks established in the Banking Department's Liquidation Bureau a new department known as the Real Estate Bureau. Willard K. Denton, Special Deputy Superintendent of Banks, appointed pursuant to sections 62■ and 63* of the Banking Law, is in charge of the Real Estate Bureau. All of his acts, as well as the acts of all other employees of the Real Estate Bureau are under the supervision of the Liquidation Bureau and of the Deputy Superintendent of Banks in charge thereof. The duties of the Real Estate Bureau in the servicing and managing of the parcels of real estate include collection of rents, making of repairs and improvements, hiring all employees, fixing their salaries, hours of labor and conditions of employment, purchase of materials and supplies required in the operation of the buildings serviced, renting of apartments, etc.

Salaries of the employees in question, as, indeed, the salaries of all employees of the Liquidation Bureau and all other expenses thereof, are paid by the Superintendent out of the assets of the closed financial institutions taken over by him.

In the operation and management of the San Remo Apartments, fifty-four persons are thus employed pursuant to sections 62 and 63 of the Banking Law, including a superintendent, assistant superintendents, mechanics, porters, doormen, elevator operators, renting agent, etc. In the operation and maintenance of the Beresford Apartments sixty-seven persons are similarly employed. The employees engaged in the actual operation of these two apartments perform services similar to those of similar types of employees

engaged in the operation of apartment houses of the same class privately owned. The salaries of employees of the Beresford and San Remo Apartments are paid by check on an account entitled " Real Estate Bureau — Payroll Account."

The superintendent of each building was engaged directly by Willard K. Denton, Special Deputy Superintendent of Banks, with the approval of George A. Porter, Deputy Superintendent of Banks. All other employees engaged since plaintiff took over the properties have been hired by the superintendents of the respective buildings after first receiving authorization either from Mr. Denton or an executive of the Management Department of the Real Estate Bureau.

In general the Superintendent of Banks operates and manages the said apartment buildings in the manner hereinabove stated and more fully set forth in the submission, in his official capacity as an officer of the State of New York, under and pursuant to the provisions of the Banking Law, and he will continue to operate the Beresford and San Remo Apartments until, in the course of the liquidation, it becomes feasible, profitable and practicable and in the judgment of the Superintendent, advisable to sell or otherwise dispose of said buildings.

The Superintendent pays, out of the assets of the bank in his possession, all real estate taxes assessed on the properties and files franchise tax returns for the corporations involved and pays the taxes reflected in such returns to the Comptroller of the State.

The relationship between the Superintendent, acting as liquidator, and the employees engaged in the maintenance of the two buildings involved, especially when considered in the light of the public policy of the State solemnly declared in the State Labor Relations Act, indicates that the employees in question are not, within the meaning of section 715 of the Labor Law, employees of the State or an agency thereof, so as to be excepted from the provisions of the Labor Relations Act. The Superintendent, as liquidator, operates these properties for the purpose of making distribution of the assets of the closed bank to its creditors and shareholders or, if found feasible, for resumption of the private operation by the banking corporation. (Banking Law, §§ 58■, 61■.) All surplus, after payment of wages and other expenses, is distributed to the creditors and shareholders of the bank in liquidation. The premises in question are, therefore, being operated ultimately for the benefit of private persons, and the Superintendent, by the Banking Law, is vested with the powers previously exercised

by receivers appointed by the courts. As was said by the Court of Appeals, referring to section 19 of the Banking Law of 1909, which antedated the present section 57█: " The title of the section ' proceedings against and liquidation of delinquent corporations and individual bankers; ' * * * and the conditions which brought about its enactment, all conspire to stamp this as a statute under which the superintendent is empowered to take possession of a bank, not as a public inquisitor, but as a receiver and conservator of its assets." (*Matter of Union Bank*, 204 N. Y. 313, 316, 317.)

In the case of *Isaac* v. *Marcus* (258 N. Y. 257), in discussing the very liquidation involved here, the court declared:

" The Superintendent of Banks, as we have said, is, in effect, a statutory receiver. He is not an officer of the court and he derives his powers from the fiat of the Legislature. The Legislature pursuant to its power to regulate banking and to create banking corporations, has provided that the Superintendent of Banks shall supersede the officers and stockholders of the corporation in the control of the corporate affairs [p. 264]. * * *

" The managing body of the corporation no longer can control its action. The Superintendent of Banks stands in the place of the managing body " (p. 265).

The employees in question are paid out of private and not public funds, specifically out of the funds received from the operation of the respective buildings themselves or, if such funds are insufficient, out of the general assets of the estate of the bank in liquidation. (Banking Law, § 63.) Neither the State of New York nor its treasury is liable for any of the wages of these employees. . Profits or losses on the operation of the buildings will not increase or decrease the funds of the State of New York but the amounts payable to the depositors and creditors of the bank.

Prior to the taking over of the properties by the liquidator, these employees were concededly private employees working for the benefit of the private owners. After the properties were taken over, the employees in question continued the same services in the same buildings, changes in personnel being due to the usual reasons: resignation, discharge or replacement of individual employees, but the employment was in no way regulated or determined by the Civil Service Law of the State or other laws relating to State employees. They continued to work for the benefit of private individuals subject only during the temporary possession of the Superintendent to his control exercised for the purpose of conserving the assets of the closed bank for ultimate distribution to its creditors and depositors and shareholders.

Such employees are not held to be employees of the State or any agency thereof for the purposes of other statutes relating to State employees, e. g., the Civil Service Law, the New York Unemployment Insurance Law, the Social Security Law of the United States, laws relating to taxation of various kinds; e. g., Federal income taxes, from which State employees are normally exempt, the Workmen's Compensation Law (which, according to its terms, includes the State of New York as an employer, section 2). For the purposes of these and other statutes the properties in question have been uniformly considered subject to the obligations and liabilities of private institutions, and the Superintendent himself, under such statutes, has treated these very employees as not employees of the State. The anomalous and onerous consequences that would follow from treating them otherwise are too obvious to require mention. To hold these persons not to be State employees for the purposes of all other statutes and yet to classify them as such solely for the purpose of excepting them from the State Labor Relations Act is in our opinion contrary to the purpose of section 715 and the public policy of the State.

Section 700 of the Labor Law indicates the declared public policy of the State in the passage of the Labor Relations Act:

" Under prevailing economic conditions individual employees do not possess full freedom of association or actual liberty of contract. Employers in many instances organized in corporate or other forms of ownership associations with the aid of government authority have superior economic power in bargaining with employees. * * *

" Experience has proved that protection by law of the right of employees to organize and bargain collectively removes certain recognized sources of industrial strife and unrest, encourages practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions, and tends to restore equality of bargaining power between employers and employees. * * *

" All the provisions of this article shall be liberally construed for the accomplishment of this purpose.

" This article shall be deemed an exercise of the police power of the State for the protection of the public welfare, prosperity, health and peace of the people of the State."

When we consider these express purposes of the act and its terms, it seems clear that the exclusion of State employees, provided for under section 715, is made because they are responsible to the people of the State and are given in other provisions of law adequate safeguards. As indicated, the services of the employees in question are for the benefit of the depositors and creditors, and

clearly they do not receive from the State or its agencies any of the protection normally given to State employees. The elevator operators, doormen, hall captains, porters and other maintenance and service employees employed in the San Remo and Beresford Apartments are not, in any fair and reasonable analysis of their status, employees of the State of New York or any political or civil subdivision or agency thereof within the contemplation of section 715 of the Labor Law.

We restrict our ruling to the precise issue presented and, under the facts and circumstances stipulated in this submission, we hold the defendants are entitled to a declaratory judgment that the provisions of the State Labor Relations Act apply to the employees in question at the Beresford and San Remo Apartments, and that the defendant New York State Labor Relations Board had jurisdiction and may, in a proper case, investigate and certify a collective bargaining representative or take any further action justified by the provisions of the State Labor Relations Act with respect to such employees.

MARTIN, P. J., O'MALLEY, GLENNON and UNTERMYER, JJ., concur.

Judgment unanimously directed for defendants in accordance with opinion. Settle order on notice.