[S. F. No. 16245. In Bank.—November 9, 1939.]

RALPH EVANS, as Building and Loan Commissioner, etc., Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

[S. F. No. 16268. In Bank.—November 9, 1939.]

RALPH W. EVANS, as Building and Loan Commissioner, etc., Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

564

Wood, Crump & Rogers, Cushing & Cushing and Bartley C. Crum for Petitioner.

Everett C. McKeage and Richard M. Leonard, as *Amici Curiae,* on Behalf of Petitioner.

Walter H. Linforth and William M. Cannon for Respondents in S. F. No. 16245.

Sullivan, Roche & Johnson, Orrick, Dahlquist, Neff & Herrington and Linforth, Cannon & Miller for Respondents in S. F. No. 16268.

Breed, Burpee & Robinson, Morrison, Hohfeld, Foerster, Shuman & Clark, as *Amici Curiae,* on Behalf of Respondents in S. F. No. 16268.

THE COURT.—Petitioner, the Building and Loan Commissioner of this state, filed an original proceeding in this court (S. F. No. 16245) seeking a writ of prohibition and a writ of mandate directed to the respondent Superior Court. Respondents filed a demurrer and an answer to the petition but the material facts, for the purpose of this discussion, do not appear to be in dispute.

Pacific States Savings and Loan Company, hereinafter referred to as the "association", was organized in this state and was doing business under the Building and Loan Association Act. (Deering's Gen. Laws, Act 986, hereinafter referred to as the "act".) It was one of the largest building and loan associations in the state, having assets valued by the association at approximately $50,000,000 and having investors and other creditors numbering more than 40,000. Among its assets were many large real estate holdings, including hotels, apartment houses, ranches and other properties, which were located in California, Nevada, Arizona and elsewhere, and which holdings were being operated by the association. In the operation of its offices and of said holdings, it employed a vast number of persons. The employees of the association consisted of the usual office employees found in the offices of such associations and the usual employees found in the organization of any corporation operating hotels, apartment houses, ranches and other properties. Among the office employees were several attorneys employed to handle the legal work of the association, including the work of conducting some 40 litigated cases pending in the trial and appellate courts.

As a result of examinations conducted by the petitioner, it appeared to him and he found that the association was in an unsafe condition and was conducting its business in an unsafe and injurious manner such as to render its further proceeding hazardous to the public and to its investors. Petitioner further found that the assets of the associations were then impaired to the extent specified in section 13.11 of the act. He further found that the association had refused to submit certain of its books, papers and accounts to the inspection of petitioner's examiners and had destroyed certain of its records. Petitioner, acting under the powers granted to him under said section 13.11 of the act, did, on the 4th day of

March, 1939, demand and take possession of the property, business and assets of the association. Thereafter and within the time permitted by section 13.12 of the act, the association applied to the respondent court seeking to enjoin further proceedings by petitioner. Said action was numbered 286711 in the files of said court and will be hereinafter referred to as the main injunction suit. Petitioner filed his answer in said suit and the trial thereof commenced on March 20, 1939. The trial had already consumed 30 trial days and was then but partially completed when the investors' suit hereinafter mentioned was commenced in the respondent court.

After taking possession, petitioner employed special counsel for the purpose of defending the main injunction suit and for the purpose of advising him on and handling other legal matters connected with the business of the association and the numerous enterprises in which the association was engaged. Petitioner also employed accountants and appraisers for the purpose of further examining into the condition of the affairs of the association and its various enterprises. In addition to the litigation pending at the time petitioner took possession, there has since been filed a jeopardy assessment lien upon a claim for income taxes in the sum of approximately $1,800,-000. It further appears that since taking possession, the commissioner, through his special counsel, has presented 21 applications to the superior court under section 13.13 of the act involving 304 separate contracts.

On May 8, 1939, Edward E. Cleese and others, individually and as members of an investors' committee, filed an action against petitioner and others in the respondent court seeking an injunction and declaratory relief. Such action was numbered 287901, in the files of said court and will be hereinafter referred to as the investors' suit. The main purpose of said suit was to obtain an injunction restraining petitioner from paying out of the assets of the association any sums to the special counsel, accountants and appraisers employed by petitioner as hereinabove indicated. Petitioner filed a demurrer in said suit which demurrer was overruled. He thereafter filed his answer. On May 18th, an order to show cause why a preliminary injunction should not issue came on for hearing. The matter was submitted on affidavits and the trial court announced its intention to issue the preliminary injunction sought by the investors. The first of the pending

proceedings in this court (S. F. No. 16245) was thereupon commenced but prior to the issuance of the alternative writ in said proceeding, the preliminary injunction had been signed and filed.

The material provisions of said preliminary injunction may be summarized as follows: Petitioner was enjoined, during the pendency of the investors' suit, from paying out any of the assets of the association for any services rendered or to be rendered by any of the special counsel, accountants, or appraisers who had been employed by petitioner and "generally restraining said defendants . . . from using any of the money or property of said Pacific States Savings and Loan Company for the above-mentioned purposes or any of them". It was specifically provided, however, that the injunction did not enjoin payment for services rendered or to be rendered by persons in the employ of the association at the time of the seizure or the payment of any sums authorized by law to be paid to the attorney-general for legal services rendered by him or his deputies.

The original purpose of the first of the pending proceedings before this court (S. F. No. 16245) was to prohibit the respondent court from issuing said preliminary injunction in the investors' suit and to compel said superior court to recognize the attorneys employed by petitioner and to permit them to appear for petitioner in the main injunction suit. Said injunction has since been issued but it is the claim of petitioner that if he was originally entitled to the relief requested, he should not now be denied appropriate relief by this court.

After the issuance of the injunction in the investors' suit, the trial of the main injunction suit was resumed on June 14, 1939. Plaintiff in the main injunction suit then objected for the first time to the appearance of any attorney on behalf of the commissioner in that suit other than the attorney-general, his assistants or deputies. The trial court made its minute order sustaining said objection and ordering that the commissioner "may not appear in the above entitled case *in propria persona* or by any attorney other than the attorney-general, his assistants or deputies". Petitioner then commenced the second of the pending proceedings before this court (S. F. No. 16268), being a proceeding seeking a writ of mandate to compel the respondent court to recognize peti-

tioner's special counsel and to permit said counsel to appear for said petitioner in said main injunction suit.

It is apparent from the briefs on file herein that the main question involved in this controversy is whether the petitioner had the power, upon taking possession of the association, to employ necessary assistants of his own choosing consisting of special counsel, accountants and appraisers, and to compensate said assistants out of the assets of the association. A secondary question is involved which relates to the nature of the relief which may be extended to petitioner under the circumstances in the event that it is determined that petitioner had the power above mentioned. We shall consider these questions in the order mentioned.

It was the claim of the plaintiffs in the investors' suit and it is the claim of respondents here that such power did not exist. It is contended that such power was not granted by the provisions of the act and that in any event, the provisions of the act as amended in 1931 (Stats. 1931, chap. 269, p. 483) were superseded in part by the enactment in 1933 of section 473a of the Political Code relating to the office of attorney-general and by the adoption in 1934 of article XXIV of the Constitution relating to civil service. The questions presented by these contentions are not free from difficulty and we shall first proceed to an examination of the pertinent sections of the Building and Loan Act and shall thereafter consider the effect of the subsequent enactment of section 473a of the Political Code and the subsequent adoption of article XXIV of the Constitution.

The act in question empowered the Building and Loan Commissioner to license and supervise building and loan associations. (Secs. 13.01 to 13.10.) It also empowered the commissioner to take possession of and to liquidate the business of such associations under certain conditions. (Secs. 13.11 to 13.16a.) With certain exceptions, the sections of the act conferring these powers upon the commissioner have not been amended since 1931. Said sections will be considered in the form in which they stood at the time of the seizure in 1939 and particularly with reference to the power of the commissioner to employ assistants and the manner of compensating such assistants.

Section 13.02 provided that, "The commissioner shall have power to appoint an attorney, and such deputies and such examiners, appraisers and other assistants as he may require to discharge in a proper manner the duties imposed upon him by law; and to fix their powers and duties, and such compensation as shall be prescribed or authorized by law or laws enacted subsequent to the enactment of this act. Each of such deputies before he shall enter upon the duties of his office shall take and subscribe an official oath as provided by law. The commissioner's attorney and three of his deputies shall not be subject to any civil service law of this state."

Section 13.06 provided for regular examinations by the commissioner of the affairs of each association at least once in each year. Said section also provided, "Whenever in the judgment of the commissioner the condition of any association renders it necessary or expedient to make an extra examination or to devote any extraordinary attention to its affairs, the commissioner shall have authority to make any and all necessary extra examinations and to devote any necessary extra attention to the conduct of its affairs and may cause a certified public accountant or accountants appointed by the commissioner to make an audit of such association's business and affairs; and in any such case such association shall pay a reasonable price to be fixed by the commissioner for all such extra services rendered by the commissioner or by such accountants."

Section 13.07 provided for the making of a revaluation by the commissioner of the property and investments of any association and that "For that purpose, the commissioner may use his own appraisers or may appoint local appraisers, who shall be disinterested persons, at the expense of such association payable to the commissioner in advance upon demand."

Section 13.11 provided that if the commissioner found from any examination or report that any association was conducting its business in an unsafe or injurious manner or that its assets were impaired to the extent stated therein, he could forthwith demand and take possession of the property, business and assets of such association and retain the same until the association was permitted to resume business or until its affairs were liquidated.

Section 13.12 provided that whenever the commissioner had taken possession of an association as above indicated, such association could apply within thirty days to the superior court to enjoin further proceedings, in which action the court could, after a hearing upon the merits, dismiss the application or enjoin the commissioner from further proceedings.

Section 13.13 provided for the appointment of a custodian by the commissioner upon taking possession. It further empowered the commissioner to do all ''acts as are necessary or expedient to collect, conserve or protect its business, property and assets'' and provided that ''unless the commissioner shall be enjoined from further proceedings . . . or unless such association shall with the consent of the commissioner resume business, then the commissioner shall proceed to liquidate the affairs of such association as hereinafter provided''. The section then conferred additional powers on the commissioner, including the power to apply to the superior court for orders authorizing the commissioner ''to do any act or to execute any instrument not expressly authorized by this act''. It is under this section that the commissioner, through his special counsel, has made 21 applications involving 304 separate contracts relating to the affairs of the association.

Section 13.16 provided that ''In liquidating the affairs of an association, the commissioner shall have power . . . (then enumerating various powers).'' The section continues, ''The commissioner may under his hand and official seal appoint one or more special deputies to assist in the duties of liquidation and distribution under his direction and may also employ such special legal counsel, accountants and assistants as may be needful and requisite and fix the salaries and compensation to be allowed and paid to each. All such salaries and compensation with such other reasonable and necessary expenses as may be incurred in the liquidation shall be paid by the commissioner from the funds of such association in his hands. Such expenses shall include, among other things, that part of the salary of the commissioner and of his deputies, examiners, accountants, appraisers and other assistants, and that part of the general expenses of the commissioner's office, as shall fairly represent, in the opinion of the commissioner, the proportion thereof properly attributable to such liquidation.''

Respondents apparently concede that section 13.16 of the act expressly empowers the commissioner to employ assistants such as special counsel, accountants and appraisers, and to compensate such assistants out of the funds of an association in his hands under certain circumstances, but it is respondents' claim that the commissioner will have no such power here until the main injunction suit may have terminated in his favor and until he may have determined to proceed with the liquidation of said association. We do not believe that this claim may be sustained. The above-mentioned sections of the act should be considered together (*Yager* v. *Superior Court*, 139 Cal. App. 84 [33 Pac. (2d) 451]) and when so considered, it is apparent that the legislature intended to provide a comprehensive plan for the supervision of building and loan associations generally and for the liquidation of particular associations under certain conditions. It is further apparent that the legislature intended that the ordinary costs of general supervision should be paid out of public funds raised under the provisions of section 13.17 of the act and that the extraordinary costs, such as those required for special examinations (sec. 13.06), special appraisements (sec. 13.07), and liquidation (sec. 13.16), should be paid in each instance out of the funds of the particular association involved. It has been held that a liberal rather than a strict construction should be placed upon said sections in determining the powers of the commissioner (*Wilson* v. *Superior Court*, 2 Cal. (2d) 632 [43 Pac. (2d) 286]), and with the foregoing observations in mind, we are of the view that the commissioner was empowered to employ necessary assistants and to compensate such assistants out of the funds of the association as provided in section 13.16 at any time after taking possession of said association. With reference to such assistants, the section provides that the commissioner may appoint them "to assist in the duties of liquidation and distribution". Respondents argue for a strict construction of the word "liquidation" in this connection but it is apparent that the taking possession by the commissioner under section 13.11 is a necessary and integral part of the process of liquidation and that the commissioner should be held to have the power to employ necessary assistants as provided in section 13.16 from the time of taking

possession, at which time the need for such assistants appears to be the greatest. To hold otherwise would mean that the commissioner would be empowered by the act to employ certain assistants such as accountants and appraisers at the expense of the association prior to taking possession (secs. 13.06 and 13.07), but that such powers would be suspended upon taking possession to be again revived only after the termination of the injunction suit and after the determination of the commissioner to proceed with the liquidation. In the meantime, all such expense incurred would necessarily be paid out of public funds rather than out of the funds of the association which is contrary to the evident purpose of the act. We therefore conclude that the act expressly granted to the commissioner the powers claimed by him and as will hereinafter appear, we are further of the opinion that such powers may be implied without resort to the express provisions of section 13.16 of the act.

Before discussing the effect of the enactment in 1933 of section 473a of the Political Code and of the adoption in 1934 of article XXIV of the Constitution, it appears appropriate to consider the status of the commissioner upon taking possession and throughout liquidation. During such time, the commissioner has the status of a trustee of a trust in private property, or in other words, the status of a trustee of a private trust. As was said in *Richardson* v. *Superior Court*, 138 Cal. App. 389, at page 394 [32 Pac. (2d) 405], "While it thus appears that the authority of the commissioner over the property and business affairs of the association when in his custody is subject to certain prescribed judicial review and control, the principal characteristics of his position as administrator are those of a public officer charged with a statutory duty which, for reasons of public policy, has been made to include a trust in private property." In *Mercantile Trust Co.* v. *Miller*, 166 Cal. 563, at page 569 [137 Pac. 913], the status of the superintendent of banks in liquidating a bank was described as that of a "trustee of this express trust". In *Brandon* v. *Anglo-California Trust Co.*, 177 Cal. 699, at page 702 [171 Pac. 956], it was said that the building and loan commissioner, in possession of an association, was "in effect the receiver" and in *In re Union Building & Loan Association*, 16 Cal. App. (2d) 301 [60 Pac. (2d)

562], his status was compared to that of a guardian. (See, also, *First State Bank* v. *Conant,* 117 Neb. 562 [221 N. W. 691].) In one case, it is said "that the superintendent of banking, as such, and the superintendent of banking as receiver are juridically two persons". (*Bates* v. *Niles etc. Bank,* (Iowa) 285 N. W. 626, 627.) It is of course clear that a public officer does not lose his status as such public officer upon assuming his duties under a statute as a trustee of a private trust (*Mitchell* v. *Taylor,* 3 Cal. (2d) 217 [43 Pac. (2d) 803]), but it is equally clear that he does acquire a new status and that his powers and duties must be considered in the light of such status as the trustee of such private trust. (*Carpenter* v. *Pacific Mutual Life Ins. Co.,* 10 Cal. (2d) 307 [74 Pac. (2d) 761].) ▆ It requires no citation of authority to support the proposition that among the ordinary powers and duties of a trustee of a private trust are those of doing all acts necessary and expedient to collect, conserve and protect the property of the trust, to maintain and defend the integrity of the trust for the benefit of the beneficiaries and to employ such assistants as may be necessary for said purposes. If the trustee acts in good faith, he has the power to employ such assistants and to compensate such assistants out of the assets of the trust even though he may not ultimately succeed in establishing the position taken by him as such trustee. (*Dingwell* v. *Seymour,* 91 Cal. App. 483 [267 Pac. 327]; see, also, *Estate of Duffill,* 188 Cal. 536 [206 Pac. 42].) It would seem to follow that, in the absence of statutory provisions to the contrary, a public officer, acting under a statute as the trustee of a private trust, would have similar powers and duties. There are no provisions to the contrary in the act itself and unless there are other statutory provisions necessitating a different conclusion, it should be held that the commissioner had the implied power to employ and compensate such assistants and that he could rely upon such implied power as well as the express power granted by section 13.16 of the act.

The status of such public officers acting as such trustee is further clarified by the authorities holding that persons specially employed by such officers in the administration of such private trusts are not public employees. (*Helvering* v. *Therrell,* 303 U. S. 218 [58 Sup. Ct. 539, 82 L. Ed. 758]; *In re Kinney,* 257 App. Div. 496 [14 N. Y. Supp. (2d) 11]; *White*

v. *Boland,* 254 App. Div. 356 [5 N. Y. Supp. (2d) 119];
*Davie* v. *Commissioner,* 26 B. T. A. 1007.) This view appears
to be the only logical one for otherwise the state would be
liable for certain negligent acts of all persons specially em-
ployed by the commissioner in the administration of the trust,
including the numerous persons employed in the various en-
terprises formerly conducted by the association. (Vehicle
Code, sec. 400.)

We now come to the claim that the commissioner may
be represented only by the attorney-general and that he may
not employ special counsel of his own choosing and compen-
sate such special counsel out of the funds of the association.
Said claim is based upon section 473a of the Political Code,
enacted in 1933 and the discussion up to this point has pro-
ceeded without reference to said section.

That section provides, ''No department, division, commis-
sion, bureau, board, office or institution of the State . . .
(with certain exceptions not material here), shall employ
any legal advisor or attorney other than the Attorney Gen-
eral, or one of his assistants or deputies, in any matter in
which such department, division, commission, bureau, board,
office or institution is interested.

''Whenever the provisions of any existing statute authorize
any department, . . . to employ an attorney or attorneys
or any person in a legal advisory capacity . . . , the terms of
such statute shall . . . be deemed and construed to refer to
an assistant or assistants, deputy or deputies, of the Attorney
General . . . ''

''The cost of all such legal services performed or rendered
by the Attorney General . . . for a department . . . which
is supported otherwise than by appropriations from the gen-
eral fund in the State treasury, shall be a charge against,
and shall be paid from the moneys and funds appropriated,
or made available by law, for the support of such department
. . . , and shall be fixed and determined by the Attorney Gen-
eral. All moneys paid for such services . . . shall be paid
into the State treasury to the credit and in augmentation of
the current appropriation for the support of the Attorney
General's office, to be expended in accordance with law, for
the support of said office.''

It must be conceded at once that the provisions of said
section 473a appear to be quite broad and sweeping but said

provisions must be construed in the light of other existing statutes and of the object sought to be accomplished by the enactment of said section 473a. Prior to the enactment of said section, many state departments had employed counsel, other than the attorney-general, which counsel were engaged in doing state work and were paid out of public funds. In the absence of statutory provisions to the contrary, said departments had that power. (*State Compensation Insurance Fund* v. *Riley*, 9 Cal. (2d) 126 [69 Pac. (2d) 985].) Many statutes relating to various departments expressly conferred that power and such was the case with respect to the Building and Loan Act. (Sec. 13.02.) The object of the enactment of said section 473a was obviously to centralize the legal work done on behalf of the state, with certain exceptions, in the office of the attorney-general and to substitute the attorney-general, his assistants and deputies in the place and stead of the various counsel who were formerly employed on state work in the several departments and who were paid with public funds by the various departments. That the object of said section was to eliminate only counsel engaged in state work and paid out of public funds and to substitute the attorney-general for such counsel seems clear from the portion of the section dealing with the payment of the cost of the added legal services to be performed by the office of the attorney-general. Such cost was to "be fixed and determined by the Attorney General" as to each department and was to be paid "from moneys and funds appropriated, or made available by law, for the support of such department" and was to be paid into the state treasury "to the credit and in augmentation of the current appropriation for the support of the attorney general's office . . . ". It therefore appears that said section has no application to special counsel, employed by the commissioner in his capacity as the trustee of a private trust for the purpose of advising him in the administration of such private trust and in maintaining and defending the integrity of such trust. Such counsel are neither engaged in state work in any fair sense of the term nor are they to be paid out of public funds. Their compensation is to be fixed by the commissioner and is to be "paid by the commissioner from the funds of such association in his hands". (Sec.

13.16.) ▆ We are therefore of the opinion that there was no conflict between said section 13.16 and said section 473a and that the former was not repealed or amended by the enactment of the latter. Furthermore, if it can be said that the enactment of said section 473a in 1933 did repeal or amend in part said section 13.16 as it stood at that time, then the reenactment of said section 13.16 in 1935 had the effect of superseding in part the provisions of said section 473a for the general rule set forth in section 325 of the Political Code relating to the reenactment of portions of a statute would not apply. (*Estate of McGee,* 154 Cal. 204 [97 Pac. 299].)

We have not dealt with the subject of contemporaneous construction in the above discussion and it will suffice to state that it appears that such contemporaneous construction is in accord with the views which we have expressed. We need search no further than the published reports to find that the commissioner and his predecessors have been represented by special counsel and not by the attorney-general in numerous cases arising since 1933. (*North American Bldg. & Loan Assn.* v. *Richardson,* 6 Cal. (2d) 90 [56 Pac. (2d) 1221] ; *Holabird* v. *Richardson,* 3 Cal. (2d) 299 [44 Pac. (2d) 530] ; *Wilson* v. *Superior Court,* 2 Cal. (2d) 632 [43 Pac. (2d) 286] ; *North American Bldg. & Loan Assn.* v. *Richardson,* 219 Cal. 685 [28 Pac. (2d) 1044] ; *Mestres* v. *California Mutual Bldg. & Loan Assn.,* 24 Cal. App. (2d) 434 [75 Pac. (2d) 74] ; *Bureau of Welfare* v. *Drapeau,* 21 Cal. App. (2d) 138 [68 Pac. (2d) 998] ; *In re Union Bldg. & Loan Assn.,* 16 Cal. App. (2d) 301 [60 Pac. (2d) 562].) The same may be said of the superintendent of banks. (*Burket* v. *Bank of Hollywood,* 9 Cal. (2d) 113 [69 Pac. (2d) 421] ; *In re Bank of San Pedro,* 1 Cal. (2d) 675 [37 Pac. (2d) 80] ; *In re First Exchange State Bank,* 26 Cal. App. (2d) 533 [79 Pac. (2d) 768] ; *W. J. Wallace & Co.* v. *Growers Security Bank,* 13 Cal. App. (2d) 743 [57 Pac. (2d) 998].) Such contemporaneous construction is not controlling but it is entitled to great respect. (*People* v. *Southern Pac. Co.,* 209 Cal. 578 [290 Pac. 25] ; *Riley* v. *Thompson,* 193 Cal. 773 [227 Pac. 772] ; *Riley* v. *Forbes,* 193 Cal. 740 [227 Pac. 772] ; *City of Pasadena* v. *Railroad Commission,* 192 Cal. 61 [218 Pac. 412] ; 23 Cal. Jur. 775, sec. 151.) Nor have we considered authorities from

other jurisdictions dealing with the duties of the office of attorney-general. We believe, however, that it is generally held that the handling of litigation, such as is involved here, is not normally the duty of the attorney-general and that such litigation should not be conducted at public expense. (*People* v. *Marquette Nat. Fire Ins. Co.*, 351 Ill. 516 [184 N. E. 800].)

 Turning to respondents' claim that the commissioner is bound by the provisions of article XXIV of the Constitution relating to civil service in employing such assistants, we believe that this claim has been largely answered by what has already been said. Section 1 of said article states that "Permanent appointments and promotion in the State civil service shall be made exclusively under a general system based upon merit, efficiency and fitness as ascertained by competitive examination." Section 4 of said article states that, "The provisions hereof shall apply to, and the term 'State Civil Service' shall include, every officer and employee of this State except . . . (then stating certain exceptions not material here)." As above indicated, we are of the view the assistants appointed by the commissioner in his capacity as a trustee of a private trust and solely for the specific purpose of furnishing services in connection with said trust are not officers or employees *of the state* and it cannot be said that their appointments are "permanent appointments . . . in the State civil service".

In considering the status of certain employees of the superintendent of banks, acting in his capacity as liquidator, it was held in *White* v. *Boland*, 254 App. Div. 356 [5 N. Y. Supp. (2d) 119], that said employees were not "employees of the State or an agency thereof, so as to be excepted from the provisions of the Labor Relations Act". The court there proceeded to point out that such employees had never been held to be employees of the state or any agency thereof for the purposes of other statutes such as the Civil Service Law, the New York Unemployment Insurance Law, the Federal Social Security Law, laws relating to taxation, Workmen's Compensation Law and the like. At page 124, the court said, "The anomalous and onerous consequences that would follow from treating them otherwise are too obvious to mention."

(See, also, *In re Kinney,* 257 App. Div. 496 [14 N. Y. Supp. (2d) 11].)

Respondents rely strongly upon *State Compensation Insurance Fund* v. *Riley,* 9 Cal. (2d) 126 [69 Pac. (2d) 985], and *Stockburger* v. *Riley,* 21 Cal. App. (2d) 165 [68 Pac. (2d) 741], in this phase of their argument. We find nothing in these cases which is at variance with the views hereinabove expressed. In each of said cases the person involved was employed to do state work and was to be paid out of public funds. Neither case indicates that persons employed by a state official in his capacity as the trustee of a private trust and paid out of the assets of the trust are subject to the civil service laws of this state.

From what has been said and by way of summary we conclude that the commissioner had the power, upon taking possession of the association, to employ the above-mentioned necessary assistants, such as special counsel, accountants and appraisers, and to compensate said assistants out of the assets of the association; that it was no part of the duty of the attorney-general under section 473a or otherwise to perform the necessary legal services required by the commissioner in his capacity as a trustee of a private trust; and that the assistants employed by the commissioner in his capacity as such trustee were not subject to the civil service laws. It follows that the injunction should not have been issued.

This brings us to a consideration of the remedy available to the petitioner. The writ of prohibition is an appropriate remedy to arrest the proceedings of a court "when such proceedings are without or in excess of the jurisdiction" of such court (Code Civ. Proc., sec. 1102) and "where there is not a plain, speedy and adequate remedy in the ordinary course of law". (Code Civ. Proc., sec. 1103.) We believe that the trial court in the present case has acted and is acting in excess of its jurisdiction in granting and enforcing the preliminary injunction. We have heretofore held that the statute authorized the commissioner to appoint necessary assistants and it appears that the proceedings of the trial court are preventing the exercise of the authority thus conferred upon him. In the recent case of *Rodman* v. *Superior Court,* 13 Cal. (2d) 262 [89 Pac. (2d) 109], this court had occasion to discuss the meaning of the term "juris-

diction'' and the question of what constituted proceedings in excess of jurisdiction. It was there said on page 490, quoting with approval from *Spreckels S. Co.* v. *Industrial Acc. Com.,* 186 Cal. 256 [199 Pac. 8]: ''But the word (jurisdiction) is frequently used as meaning authority to do the particular thing done, or, putting it conversely, a want of jurisdiction frequently means a want of authority to exercise in a particular manner a power which the board or tribunal has, the doing of something in excess of the authority possessed.'' Under the definition approved in said authorities, it seems clear that the proceedings of the trial court were in excess of its jurisdiction. We further believe that the exigencies of the situation make it apparent that the remedy by appeal from the injunction in the investors' suit is not an adequate remedy under the circumstances.

It is true as contended by respondents that the remedy by writ of prohibition is a preventive, rather than a corrective, remedy (*State Board of Equalization* v. *Superior Court,* 9 Cal. (2d) 252 [70 Pac. (2d) 482]), but as was said in *Havemeyer* v. *Superior Court,* 84 Cal. 327, at page 390 [24 Pac. 121, 18 Am. St. Rep. 192, 10 L. R. A. 627], ''the operation of the writ of prohibition is excluded only in cases when the action of the inferior tribunal is completed, and nothing remains to be done in pursuance of its void order. If its action is not completed and ended, its further proceedings may be stayed, and if it is necessary for the purpose of affording complete and adequate relief, what has been done will be undone.'' (See, also, *Pierce* v. *Superior Court,* 1 Cal. (2d) 759, at page 783 [37 Pac. (2d) 453, 96 A. L. R. 1020]; *Cosby* v. *Superior Court,* 110 Cal. 45 [42 Pac. 460]; *Primm* v. *Superior Court,* 3 Cal. App. 308 [84 Pac. 786].) Thus this remedy has been invoked in numerous cases to prohibit further proceedings by a superior court directed toward the enforcement of a preliminary injunction previously issued by such court. (*Brock* v. *Superior Court,* 9 Cal. (2d) 291 [71 Pac. (2d) 209, 114 A. L. R. 127]; *Moore* v. *Superior Court,* 6 Cal. (2d) 421 [57 Pac. (2d) 1314]; *Reclamation District* v. *Superior Court,* 171 Cal. 672 [154 Pac. 845]; *State Board of Equalization* v. *Superior Court,* 5 Cal. App. (2d) 374 [42 Pac. (2d) 1076].) The remedy has also been invoked in other situations after the court has acted.

(*Golden State Glass Corp.* v. *Superior Court,* 13 Cal. (2d) 384 [90 Pac. (2d) 75]; *Loftis* v. *Superior Court,* 25 Cal. App. (2d) 346 [77 Pac. (2d) 491]; *Jacobsen* v. *Superior Court,* 192 Cal. 319 [219 Pac. 986, 29 A. L. R. 1399]; *Elliott* v. *Superior Court,* 168 Cal. 727 [145 Pac. 101].) We therefore conclude that a writ of prohibition may properly issue here to restrain the superior court from any further proceedings directed toward the enforcement of said preliminary injunction.

 We further believe that a sufficient showing has been made for the issuance of a writ of mandate. This is an appropriate remedy when a trial court has improperly refused to recognize the attorney for a party to an action pending before such court. (*Golden State Glass Corp.* v. *Superior Court, supra.*) From what has been said, it follows that the trial court has improperly refused to recognize the attorneys for the commissioner in action numbered 286711 in the files of the respondent court.

Let a peremptory writ of prohibition issue in proceeding numbered S. F. No. 16245 restraining the respondents from any further proceedings directed toward the enforcement of the preliminary injunction heretofore issued by the respondent court on the sixth day of June, 1939, in that certain action entitled *Cleese et al.* v. *Evans et al.,* being action numbered 287901 in the files of said respondent court. And further let a peremptory writ of mandate issue in proceeding numbered S. F. No. 16268 directing respondents to recognize petitioner's special counsel and to permit said counsel to appear for petitioner in that certain action entitled *Pacific States Savings and Loan Company* v. *Evans et al.,* being action numbered 286711 in the files of said respondent court.

Carter, J., and Gibson, J., not having heard the argument, did not participate.

HOUSER, J., Dissenting.—I dissent.

Reduced to simple language, the principal question that has been submitted to this court is whether—at the expense of the Pacific States Savings and Loan Company—the building and loan commissioner is vested with legal authority to employ special counsel and assistants for the purpose of defend-

ing his initial action in "taking possession" of the business of the Pacific States Savings and Loan Company. It is conceded that if any such authority therefor exists, either it must be expressly declared in the language of the general enabling statute, or it must impliedly result therefrom.

It is a matter of public knowledge that, prior to the date of the enactment of section 473a of the Political Code, an evil of considerable magnitude existed in the administration of each of possibly dozens of boards and commissions of this state—in that each of them was legally empowered to select and appoint an attorney to prosecute or to defend any action or suit in which such board or commission actually was or conceived itself to be officially interested. In instances where it had been properly exercised, the effect of that power, in itself, may not have been particularly harmful; but, with the lapse of time, certain patent abuses of such authority crept into the practice, with the usual result that, not only as it affected the general public but also as concerned individuals, the operation of the law which conferred such authority in that regard became extremely objectionable, if not intolerable. Manifestly for the purpose of correcting such condition in the economics of state government, at the 1933 session of the legislature, section 473a of the Political Code was enacted. Since its pertinent provisions have been set forth in the prevailing opinion herein, it becomes unnecessary here to do more than appropriately refer thereto as occasion may arise. But, as far as the instant question is concerned, and, shorn of non-essentials, the purport of the provisions of the statute is that "no . . . commission . . . of the State . . . shall employ any legal advisor or attorney other than the Attorney General, . . . in any matter in which such . . . commission . . . is interested. Whenever the provisions of any existing statute authorize any . . . commission . . . to employ an attorney . . . the terms of such statute shall . . . be deemed and construed to refer to an assistant or . . . deputy . . . of the Attorney General. . . . The cost of all such legal services performed or rendered . . . for a . . . commission . . . shall be paid from the moneys . . . made available by law, for the support of such . . . commission, . . . "

Prior to the enactment of section 473a, Political Code, by the language of section 13.02 of the Building and Loan Act,

as amended (Stats. 1931, p. 483), it was provided that "The commissioner shall have power to appoint an attorney, . . . " But by section 13.16 of the same act, it was provided that "In *liquidating* the affairs of an association, the commissioner . . . may also employ such special legal counsel . . . as may be needful and requisite . . . All such salaries . . . as may be incurred in the liquidation shall be paid by the commissioner from the funds of such association . . . " (Emphasis added.) And by the terms of section 4 of an amendment to the Building and Loan Act, which became the law on September 15, 1935 (Stats. 1935, pp. 1497, 1502), the commissioner was again accorded authority, in language identical with that contained in the Statutes of 1931 (sec. 13.16), to employ special counsel in liquidating the affairs of a building and loan association.

In the premises, it is the duty of this court to determine the status of the law with respect to the question thus presented whether the commissioner is authoried to select and appoint "special legal counsel" to represent him in his official capacity, particularly with reference to his initial action in "taking possession" of the affairs and business of the Pacific States Savings and Loan Company,—with liquidation thereof probably as his ultimate object. To that end, the legal effect of the 1935 amendment to the Building and Loan Act, to which attention just has been directed, first may be considered. As an initial premise to such consideration, it may not be improper to assume that by the language employed in the Building and Loan Association Act of 1931 the commissioner was empowered, generally, "to appoint an attorney"; and that in *liquidating* the affairs of an association he was authorized to employ "such special legal counsel . . . as may be needful and requisite". Also, it may properly be assumed that by the direct terms of section 473a of the Political Code the commissioner was deprived of the right which he had formerly possessed to employ either general or special counsel. However, the amendment of 1935—as far as it purported to empower the commissioner "in *liquidating* the affairs of an association . . . [to] employ such *special legal counsel* . . . as may be needful and requisite"—was couched in language identical in all respects with that which had obtained in the statute of 1931 with respect to the same

situation; and in that regard, in the main decision herein, it is asserted that the effect of the 1935 amendment was that the pertinent provisions of section 473a of the Political Code were impliedly repealed, and that the provisions of the 1931 amendment were restored. In that respect, it should be noted that by the provisions of the statute of 1931 the subject of the appointment of an attorney is divided into two parts,—first, by section 13.02, in which the appointment of *"an attorney"* is authorized, and, secondly, by section 13.16, which provides that "In *liquidating* the affairs of an association, the commissioner shall have power . . . to commence and prosecute all actions and proceedings necessary to *enforce liquidation;* . . . and may also employ such *special legal counsel,* . . . as may be needful and requisite . . . " Were it not for the serious manner in which the effect of the provisions of section 473a of the Political Code has been considered—and construed to the contrary—in the prevailing opinion herein, it would seem incontestible that language which, in so many words, declares that "No . . . commission . . . shall employ *any* legal advisor or attorney other than the Attorney General" could mean anything other than what it plainly appears to import. And, under the assumption that section 473a actually does mean what it purports to say, the conclusion may be drawn that the commissioner was without authorization either to appoint *"an attorney"* (as had been provided by section 13.02 of the 1931 Building and Loan Association Act), or to employ *"special legal counsel* . . . in *liquidating* the affairs of an association" (as was also provided by section 13.16 of that act). Thereupon, it may be conceded that the 1935 amendment to the act, by which the provisions of section 13.16 were reenacted,—to the effect that *only in liquidating* the affairs of an association was the commissioner authorized to employ "special legal counsel",—abrogated to *that* extent, but to that extent *only,* the provisions of section 473a of the Political Code. In other words, the 1935 amendment had the effect of restoring to the Building and Loan Association Act the pertinent provisions of section 13.16,—but it had no effect whatsoever on section 13.02 of the act. Otherwise stated, the commissioner had no authority "to appoint *an attorney"*, except in connection with the process of *"liquidating"*, pursuant to his *"Powers upon liquidation"* (see caption of section 13.16)

—in which event he was authorized to "employ *special legal counsel*". (Emphasis added.)

The original Building and Loan Association Act of this state became the law with reference to building and loan associations in 1893. (Stats. 1893, p. 229.) By the provisions of that act, the office of commissioner was created and his powers and duties as such were therein defined. Thereby, generally, he was authorized to examine in minute detail into the financial status of those organizations; and if, on any examination of any such association, in the opinion of the commissioner the business of the association appeared to be in an "unsafe" condition, it became his duty, *through the office of the attorney general,* to institute court proceedings with a view to the possible *liquidation* of such association. In nearly every session of the legislature held since that time, the act has been variously amended, but it was not until 1931 that the act was amended to provide that the attorney general might be relieved of his duties with respect to representing the commissioner in proceedings in court. Prior to 1931, the commissioner was not legally authorized to employ any counsel other than the attorney general, and the latter was authorized to represent the commissioner only in *liquidation* proceedings, or those which related thereto. If it is a fact, as is confidently asserted by the commissioner and so conceded within the prevailing opinion herein, that at all times since the creation of the Bureau of Building and Loan Associations in this state the commissioner has been represented by counsel other than the attorney general, it is clear that such employment was not in accordance with the law, but was contrary to it. The theory of "contemporaneous construction" can be of no avail in the face of such conditions. By statutory provisions, it is clear that two distinct divisions of public business have been recognized as appertaining to the administration of the office of commissioner,—first, the duty of attending to the ordinary routine in connection with the "supervision, examination and license of all building and loan associations", and, secondly, in the event that any such association should be deemed to be "unsafe", that of instigating proceedings which—assuming the facts to justify such action—might result in an order of liquidation. But, as hereinbefore has been indicated, at the legislative session in 1931 the act was so amended that, by the provisions of section 13.02 thereof, the

commissioner was empowered "to appoint *an attorney*"; and, in addition thereto, in accordance with his *"Powers upon liquidation"*, under section 13.16 of the act, he also was authorized to "employ such *special legal counsel . . .* as may be needful and requisite . . . " But *until "liquidation" has commenced* no such authority is vested in the commissioner, as is clearly indicated by other provisions of the act. Under the caption of *"Power to take possession of association"*, section 13.11, in effect, provides that if, as a result of his examination of the business affairs of an association, the commissioner shall discover the existence of certain specified conditions therein, "then the commissioner may forthwith demand and take possession of the property, business and assets of such association and retain such possession until such association shall with the consent of the commissioner resume business, *or* until its affairs be *liquidated.* Such association may, with the consent of the commissioner, resume business upon such conditions as may be approved by him." (Gen. Laws 1937, p. 599.) (Emphasis added.) In effect, practically demonstrating the fact that such *"taking of possession"* is no part of *"liquidation"* of the association, but in fact is a proceeding preliminary to and in anticipation of the possibility of such liquidation, section 13.12 plainly provides that "Whenever any association of whose property, business and assets the commissioner has taken possession, as aforesaid, deems itself aggrieved thereby, it may at any time within thirty days after such *taking possession* apply to the superior court of the county in which the principal office of such association is, located, to enjoin *further* proceedings; and said court after citing the commissioner to show cause why *further* proceedings should not be enjoined, and hearing the allegations and proofs of the parties and determining the facts, may upon the merits dismiss such application or enjoin the commissioner from *further* proceedings and direct him to surrender such business, property and assets to such association". (Gen. Laws 1937, pp. 599, 600.) (Emphasis added.) Furthermore, by section 13.13, it is provided that "Unless the commissioner shall be enjoined from *further* proceedings and directed to surrender such business, property and assets or unless such association shall with the consent of the commissioner resume business, *then* the commissioner shall proceed to *liquidate* the affairs of such association as hereinafter pro-

vided. Whenever the commissioner shall be in possession of the business, property and assets of any association, and regardless of whether or not he shall be *liquidating* the affairs of such association, the commissioner may in his discretion, etc., . . . '' (Gen. Laws 1937, p. 600.) (Emphasis added.) Thereafter, within that same section of the act are found general provisions which relate to various duties and discretionary powers of the commissioner in connection with his application for confirmation by the court of his action in ''taking possession'' of any association, with regard to the payment of current expenses incurred prior to his taking possession, and also as to his authority to disaffirm any executory contracts to which the association may have been a party. Section 13.14 of the act relates to consequences which may ensue by reason of a refusal by the association to comply with the commissioner's ''demand of possession''; and section 13.15 requires that the association ''furnish schedule of property''. But in the succeeding section, designated as 13.16, may be found the provisions which *set apart* and *distinguish* the act of ''taking possession'' from that of ''liquidation''. Furthermore, as hereinbefore has been indicated, by the provisions of section 13.12 of the act, any association which ''deems itself aggrieved'' by the act of the commissioner in *''taking possession''* is authorized to institute a proceeding in the superior court ''to enjoin *further proceedings''* by the commissioner; and after ''hearing the allegations and *proofs* of the parties'', the court may ''upon the merits dismiss such application or enjoin the commissioner from *further proceedings* . . . '' (Emphasis added.) As has also hereinbefore been indicated, section 13.16 is entitled *''Powers upon liquidation.''* Therein, *following* either a judgment by the court or a prior uncontested determination by the commissioner that *liquidation* shall ensue, the several powers and duties of the commissioner are set forth in detail,—including his right to ''employ such special legal counsel . . . as may be needful and requisite . . . '' To render unmistakable the fact, herein assumed, that the act of ''taking possession'' is separate and distinctly severable from the process of ''liquidation'',—it is clearly shown that by the provisions of section 13.12 either the association or the commissioner is given the right to appeal from a judgment that may be rendered with direct reference to the act of ''taking possession''. In that

regard, the situation may be comparable to that of an administration upon the estate of a deceased person. Although administration of an estate as a whole may consist of one entire proceeding, nevertheless, from each of various and sundry orders which may be made by the court in the course of such proceeding, an appeal is permitted (sec. 1240, Probate Code; sec. 1233, Code Civ. Proc.),—thus indicating that each of the matters embraced within such several orders may be separate and severable from the administration of the estate as a whole.

But, both by counsel who represent the commissioner and by those of my associates who subscribe to the doctrine announced in the prevailing opinion herein, it is declared, first, that the provisions of section 473a of the Political Code apply only to "public" duties of the commissioner; secondly, that in the instant matter the commissioner is not engaged in the performance of a "public act", but that he is merely exercising his prerogative as a trustee in the administration of a private trust,—and as a consequence thereof that he has an implied power to employ "special counsel". With respect to such conclusions, it should be noted that neither by express language contained in section 473a nor by any legal precedent whatsoever is such a determination warranted or justified. The language of section 473a is singularly free from ambiguity. In distinct terms, it declares that "no commission . . . shall employ *any* legal advisor or attorney other than the attorney general . . . in *any* matter in which such commission is interested". (Emphasis added.) By what process such language may be "construed" so as to exclude from its plain and express import such a matter as the one which forms the basis for the instant controversy is not shown. Moreover, it is clear that authority to perform each and every duty or act that lawfully may be performed by the commissioner as such is derived from the provisions of the statute. In other words, all his powers and duties as a commissioner are derived from the provisions of the enabling statute. All his lawful acts as such commissioner are "public" duties. Certainly as a private citizen he would have no authority to "take possession" of the property and assets of any building and loan association. When he performs such an act, necessarily he assumes to do so solely in his official capacity, with the consequence that his acts in that regard must be deemed to be

"public" acts. Except for the proposition that in a sense every public officer in the performance of his duties as such is a trustee for the public, in the instant case there is no resemblance in fact to the relationship of trustor and trustee. In the sense here under consideration, as well one might say that a sheriff in making an unauthorized execution sale in a foreclosure proceeding is a trustee, as to say that the commissioner is a trustee in the instant matter. In respect to the duties of a public officer, in an appropriate case, perhaps a closer analogy might be found in those duties performed by a public administrator in the care and management of the estate of a deceased person. For example, if on the death of a wealthy person, who at the time thereof was living with his wife and children within this state, the public administrator were to seize and "take possession" of the property and assets of the estate,—until his legal authority to do so had been *established*, certainly no such powers as ordinarily flow from a legal trusteeship would be vested in the public administrator; and if, following a contest with regard to his assumed right to "take possession" such act was not sustained by judgment of the court,—by no rule of law or equity would the public administrator be entitled to withdraw funds from those of the estate in order to compensate "special legal counsel" whom he had employed in the matter of his attempt to justify his act in "taking possession" of the assets of the estate. Certainly the act of intrusion and usurpation, even though performed by a public officer in pursuance of an assumed public duty, could form no foundation for a claim of equitable trusteeship sufficient to support an assertion of any rights that might accrue under a trusteeship which might have been legally created, or one which ordinarily might arise from the relationship of the parties. Manifestly, it should be apparent that when the legality of the act of "taking possession" is properly challenged in an appropriate proceeding in court, any principle of equity which ordinarily might be applied with regard to either the express or implied rights and duties of a legally constituted trustee has no application.

If, as heretofore has been suggested, the act of "taking possession" of the assets of an association may properly be considered as a matter distinct and separable from the process of "liquidation" of such association, the language employed

in section 13.16 becomes most significant, if not controlling, in the matter of determining whether the commissioner was authorized to employ special counsel in defense of his initial action. In that section, which is captioned *"Powers upon liquidation"*, all the provisions are based upon the assumption that "liquidation" either has been adjudged by the court, or that, in the absence of an objection or contest by the association of the act of the commissioner in "taking possession", the latter—in the exercise of his powers in that respect—has determined that liquidation shall follow. With that consideration in mind, the general language of the section becomes of great importance. It purports to detail the powers of the commissioner,—not on *"taking possession"* but, specifically, "Upon liquidating". In fact, the opening words of the statute are: "In *liquidating* the affairs of an association, the commissioner shall have power . . . [including that of employing special legal counsel]." (Emphasis added.)

Counsel who represent the commissioner, as well as the members of this court who adhere to the prevailing opinion herein, insist upon "construing" not only the language of section 473a of the Political Code, but also that contained in section 13.16 of the Building and Loan Act. But nowhere is it pointed out what particular words or phrases of either statute are in need of any such treatment. To my mind, the language of each of such statutes, as well as the manner in which it is couched, requires no "construction". That language is so plain, explicit and direct in its import that, in all fairness, its meaning may not be questioned. And, in accordance with the well-established rule, unless the language of a questioned statute is ambiguous or uncertain a court is without authority to "construe" it or to accord to it any meaning other than that which is plainly expressed. (23 Cal. Jur. 721, and authorities there cited.)

On consideration, therefore, of the express provisions of the pertinent statutes to which attention hereinbefore has been directed, to my mind the only logical or justifiable conclusion that may be reached thereon is that no authority exists on the part of the commissioner to employ "special counsel" until after liquidation of the affairs of an association has commenced, or where such action has been duly authorized.

Since each of the other questions presented is either subsidiary to or dependent upon the determination reached on

consideration of the main question, it becomes unnecessary to devote attention to any of them herein.

Curtis, J., and Edmonds, J., concurred.

Rehearing denied. Curtis, J., Edmonds, J., and Houser, J., voted for a rehearing.

Spence, J., *pro tem.*, sat in place of Gibson, J., who deemed himself disqualified.